**TASSIN v. DOWNS et al.**

No. 5797.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1939.

Rehearing Denied April 28, 1939.

Writ of Certiorari and Review Denied June 26, 1939.

Lee J. Novo, of Alexandria, for appellant.

Edward Rightor, of New Orleans, George J. Ginsberg, of Alexandria, and W. H. Sellers, of New Orleans, for appellees.

DREW, Judge.

This suit was instituted by Mrs. Agnes Tassin, widow of Dennis Tassin, individually and as the duly qualified tutrix of her minor daughter, for damages for the death of her husband and the father of the minor child. Plaintiff's husband was attempting to cross Rapides Avenue in the city of Alexandria, going from the south side to the north side, when he was struck or run down by defendant, who was driving his own car.

The acts of negligence alleged are that defendant was speeding, not keeping a proper lookout and did not have his car under proper control; also that he had the last clear chance to avoid the accident.

Defendant denies any negligence on his part and avers that the accident was caused solely by the negligence of decedent in walking out into the street directly from behind another automobile into the path of defendant's car, and too close for him to be able to prevent the accident. In the alternative, he pleaded contributory negligence on decedent's part.

Plaintiff also made Montgomery-Ward & Company a party defendant, alleging it was the insurer of defendant. During the trial of the case it was shown that defendant's insurer was the Sun Indemnity Company and the case against Montgomery-Ward & Company was abandoned.

After trial was had below there was judgment rejecting plaintiff's demands, from which judgment plaintiff prosecutes this appeal.

This case to a great extent involves only questions of fact, and, although we are reluctant to reverse a lower court on its finding of facts, we feel it our duty to do so when its findings are clearly erroneous.

Bolton Avenue and Rapides Avenue, in the city of Alexandria, are two of the main arteries which run through that city. Bolton runs north and south and Rapides east and west. Where they intersect the corners are rounded off, making an unusually large intersection. Forty-five feet west of the west side of Bolton, at this intersection, Florence Avenue intersects Rapides;

but does not cross it. Situated on the south side of Rapides on this short block between Bolton and Florence, facing Rapides is Cicardo's Store. On the east and west sides of Florence Avenue where it intersects Rapides there are lanes for pedestrians across Rapides marked with yellow paint. On the east side of Bolton where it intersects Rapides, there is a pedestrian lane marked off with yellow paint.

Rapides Avenue is 43 feet wide but, due to the rounded corners, the pedestrian lane on the east side of the Rapides and Bolton intersection is 110 feet. From the west side of this pedestrian lane to the east side of the east pedestrian lane at Florence Avenue is 140 feet. The distance across Rapides at this east pedestrian lane is 90 feet. The west pedestrian lane at Florence and Rapides is 37½ feet west of the east lane, that being the width of Florence Avenue. The distance across Rapides Avenue at this lane is, due to the angle at which it runs approximately 48 feet.

The decedent was operating a filling station on the north side of Rapides Avenue. He had been to Cicardo's Store and was returning to his place of business. It was about 7:30 P. M., on March 3, 1937, and was dark. When he left Cicardo's Store he proceeded to the west pedestrian lane at Florence and Rapides and· started across Rapides. His place of business was almost directly opposite the north end of this lane. Decedent reached the center of Rapides and, as he stepped over the center line, 24 feet from where he left the south side of Rapides, he was struck by defendant's car and received injuries which caused his death sixteen days later.

The intersection of Bolton Avenue with Rapides and Florence Avenue with Rapides, as well as the street in that vicinity, was exceptionally well lighted. There was a street light at the intersection of both Bolton and Florence with Rapides. On the front of Cicardo's Store there were several lights and on the opposite side of the street was the Standard Filling Station, well lighted by flood lights which shone on the street. In the same locality there was a Sinclair Filling Station that used flood lights and which shone onto the street. There are some trees west of where Florence Avenue intersects Rapides, but they do not in any way interfere with the light at this intersection or the pedestrian lane across Rapides at this point.

The speed limit for motorists, as fixed by ordinance of the City of Alexandria for this part of the city, is 18 miles per hour, except when turning corners and at intersections, when it is fixed at 9 miles per hour. It is admitted by all that traffic is heavy on both Bolton and Rapides Avenues until after midnight. There is a semaphore light in the center of Bolton and Rapides to direct traffic. There is no such light at Florence and Rapides.

Plaintiff contends that defendant was negligent in that he was speeding, not keeping the proper lookout and did not have proper control of his car at the time of the accident, and she also alleges that defendant had the last clear chance to avoid the accident.

Defendant admits he was exceeding the speed limit and traveling at a rate of 25 miles per hour. Some four or five witnesses for plaintiff testified he was traveling much faster, fixing his speed from 45 to 60 miles per hour. The mute physical facts convict defendant of speeding. When he first saw decedent he applied his brakes, which were hydraulic and took effect immediately. Almost at the same time his brakes took effect, he struck decedent and carried him on the car a distance, according to the map which is drawn to scale and filed by defendant, of approximately 90 feet. After striking decedent the car angled to the right, finally ran into the curb, careened off of it and collided with the rear end of an automobile parked in front of a residence adjoining a mattress factory, some 90 to 100 feet from the point of contact with decedent, and with such force as to break and cause to fall to the ground a flat piece of steel or iron which was bolted onto the rear of the car and was used in connecting a trailer thereto. The impact with decedent and with the car was heard for some distance by witnesses who ·were inside their homes or their places of business. Defendant's car was damaged by coming in contact with decedent and the parked automobile in the following manner, to-wit: a dent in the radiator shell, a headlight lens broken, a dent· in the fender, a bent hood, a bent fender, the bumper bent, the brackets holding the bumper were bent and the hood was bulged.

Defendant admitted that his car skidded twice its length, or approximately 30 feet, after applying his brakes. Most of the other witnesses testified the skid marks

showed on the pavement for from 35 to 60 feet. Only one witness claimed to have measured the skid marks and he fixed it at 23 steps of 2½ feet to the step, or 57½ feet.

With this mute evidence before us, we do not have to deal in imagination to come to the conclusion that defendant was driving his automobile greatly in excess of 25 miles per hour, and is strong corroboration of the witnesses who placed his speed at from 45 to 60 miles per hour. We are also convinced that defendant was not keeping a proper lookout. If we take defendant's testimony that he did not see the decedent until a moment before he was struck together with the other facts as we find them, there can be no doubt of defendant failing to keep a proper lookout. He contends that the reason he did not see the decedent sooner was that the latter stepped out from behind an automobile which passed traveling in an easterly or opposite direction. A careful analysis of this statement will show it is unsound. At the time decedent was struck he was, according to defendant's testimony, more than 24 feet into the street from where he left the curb. Defendant testified that the passing automobile was hugging the center line of the street. If this be true, in order for decedent to have stepped out from behind this car in front of defendant's, just as the two passed, decedent would have had to be 17 to 18 feet out in the street before the passing automobile overtook him. If that were true, there was nothing to prevent defendant from seeing him before the passing car reached that point in the street. If decedent did not leave the curb until after the passing car had overtaken him, it is evident that defendant would have passed this vehicle some distance east of the Florence street intersection. It cannot reasonably be argued that the decedent walked 24 feet into the street after the car traveling east had passed, and yet argue that he stepped out from behind this automobile in front of defendant's and only a few feet from it.

The car which defendant passed was driven by one Mitchell, who was driving slowly. Although he repudiated a voluntary written statement he gave to plaintiff's counsel soon after the accident and for reasons known only to himself and the insurance company's adjuster, from a reading of his testimony it is very apparent that he was trying to assist the defense.

He testified that the decedent did not at the time he was injured start across the street until after he had passed him, and that he (Mitchell) passed defendant just as they reached the west side of the intersection of Bolton and Rapides. From this point to the east pedestrian lane at Florence and Rapides, which decedent was using, is 82½ feet; the lane is possibly 10 feet wide and, assuming decedent was occupying the center of it, would make a distance of 87½ feet from decedent to defendant's car, with no obstruction of view. We are convinced there was no other car in that vicinity at that time. If defendant had been keeping a lookout, he would have had little or no difficulty in avoiding decedent, who was in the center of the street when struck by him. There were no cars parked on either side of that point and the street was 43 feet wide. Had defendant been observing the traffic laws of the City, he could easily have brought his car to a complete standstill before reaching the place where decedent was.

■ There is no merit to the plea of contributory negligence. At the intersection where decedent attempted to cross the street, there is no semaphore light to direct traffic or pedestrians. Decedent was therefore justified in attempting to cross at this point at any time it appeared safe. It was his duty to look both ways before entering the street. One witness testified he did. No one testified to the contrary. We can disregard this testimony, as the lower court did, and it will make no difference in the result. The lips of the person who attempted to cross the street and was struck by defendant are silent in death, but where there is no evidence to the contrary, as in this case, the law presumes that he complied with the law in every respect before entering the street. Hamilton v. Lee, La.App., 144 So. 249.

■ The physical facts, as we have outlined above, show clearly that when decedent started across the street, defendant's car was a good distance east on Rapides Avenue. Decedent had the right in law to presume that defendant would observe the law as to speed and, if he had, decedent would have had more than sufficient time to negotiate the crossing before defendant's automobile reached the intersection of Florence with Rapides.

■ We therefore find that defendant was negligent in that he was driving his

car at the time of the accident at an excessive speed; that he was not keeping a proper lookout, and that this negligence was the proximate cause of the accident.

The lower court in a written opinion rejecting plaintiff's demands discredited all of plaintiff's witnesses to the accident on the ground principally that their testimony was unreasonable and that they could not have seen what they testified they saw. If it had not been for the reasons the lower court gave for discrediting them, we would be slow to disagree with its opinion on that issue. But we are convinced, from a reading of the opinion, that the physical facts in the case were not given any consideration. When a witness' testimony is corroborated by the physical facts and, in some instances, by the testimony of defendant, we are unable to say his testimony is unreasonable. Furthermore, defendant's testimony, when properly analyzed and coupled with the facts, is sufficient to condemn him. He admitted he was exceeding the speed limit by from seven to sixteen miles and that he did not see the decedent, who was in the middle of a well lighted street, until his car was within a few feet of him. The analysis we have made heretofore in this opinion shows conclusively that defendant had an unobstructed view of decedent for a distance of 87½ feet before he struck him and, in the eyes of the law, he saw decedent that distance ahead.

The judgment of the lower court is therefore reversed and plaintiff is entitled to judgment.

We are informed in plaintiff's brief that the minor, Lela Louise Tassin, one of the plaintiffs, has died since the case was tried below. There are no pleadings otherwise to indicate it. We feel justified in accepting the statement made in plaintiff's brief and are therefore not concerned with her claim for damages. This leaves only the widow of the decedent now as plaintiff.

Decedent was 36 years of age and was earning a living for his wife and daughter. He was a well, able-bodied man. His life expectancy was thirty years. The principal injury, other than bruises received by decedent in the accident, was a compound, comminuted fracture of the left leg, both bones. He lost a great deal of blood and suffered a great deal during the 16 days he lived after the accident. He remained in bed continuously from the date of the accident until his death, and died as the result of having a blood clot turned loose at the site of the fracture and whirled into the bloodstream until it reached some vital organ. The medical term for this is embolism.

The expenses incurred by decedent's widow for treatment and the funeral are as follows:

Doctors' bill ..................... $100.00
Hospital bill ..................... 106.20
Funeral bill ..................... 240.00

or a total of $446.20. She is entitled to recover this amount.

For pain and suffering endured by the decedent, loss of support, companionship, etc., Mrs. Tassin, widow of decedent, is entitled to the sum of ten thousand ($10,000) dollars.

It therefore follows that the judgment of the lower court is reversed and there is now judgment in favor of Mrs. Agnes Tassin and against Malcolm C. Downs in the full sum of $10,446.20, with legal interest thereon from judicial demand until paid; and for all costs of this suit.