120 So.2d 501

Robert W. McCANDLESS, Sr.,[1]

v.

SOUTHERN BELL TELEPHONE & TELE-
GRAPH COMPANY.

Nos. 44093, 44114.

April 25, 1960.

Rehearing Denied May 31, 1960.

1. Plaintiff's name is Richard W. McCandless, Sr. The original petition was inadvertently filed as Robert W. McCandless, Sr. vs. Southern Bell Telephone & Telegraph Company. Plaintiff corrected the error by supplemental pleadings in the trial court, and judgment was in favor of Richard W. McCandless, Sr. The original title was carried by the Court of Appeal, but its judgment did not mention the parties by name. Our decree shall be effective as to Richard W. McCandless, Sr., not Robert W. McCandless, Sr.

C. C. Bird, Jr., Breazeale, Sachse & Wilson, Baton Rouge, for applicant (44093), respondent (44114).

Walton J. Barnes, Baton Rouge, for plaintiff-respondent (44093), applicant (44114).

HAMLIN, Justice.

In the exercise of our supervisory jurisdiction (Article VII, Section 11, Louisiana Constitution of 1921), we directed a writ of certiorari to the Court of Appeal, First Circuit, in order that we might review its judgment which amended the judgment of the trial court by reducing an award of $3,000.00 to plaintiff for the use and benefit of his minor son to $1,500.00 and affirmed the judgment in all other respects. 101 So. 2d 704.

In its opinion, the Court of Appeal recited the facts of this matter in detail, and

since there is no serious controversy as to its findings of fact we shall repeat only those facts necessary for our decision on this review.

On May 29, 1956, at approximately 4:45 P.M., plaintiff's seven year old son, Robert (Bobby) McCandless, while riding a bicycle, was struck and injured by one of defendant's trucks being driven by Nolan A. Chaix, Jr. The accident occurred in Baton Rouge on North Forty-fifth Street, which is approximately twenty-three feet wide, running north and south. It intersects Winbourne Street, which is approximately twenty-two feet in width and runs east and west.

Defendant's truck was traveling west on Winbourne Street, and upon reaching the North Forty-fifth Street intersection, the driver turned to his left in a southerly direction into North Forty-fifth Street, on his way to his employer's business for check out details. After negotiating the turn at a speed of no more than ten miles per hour, the truck was approximately twenty-six feet south of the south parallel line of Winbourne Street; it was not in the right lane of traffic (south traffic lane), being approximately eight feet west of the east parallel line of North Forty-fifth Street and thirteen feet east of the west line. At this location (north bound or east lane of traffic), the front end of the truck struck Bobby, who was attempting to cross North Forty-fifth Street from west to east.

Bobby was neither struck a hard blow, nor was he knocked unconscious; he did experience dizziness and was temporarily in a confused state. Upon arrival at a local hospital, where he was hospitalized overnight, his injuries were tentatively diagnosed as a cerebral concussion, plus multiple contusions and abrasions. Dr. Harold Holden discharged him from his care on June 20, 1956. No complications had developed at that time, and a physical examination, including neurological examination, showed that the child was within normal limits. On April 29, 1957, Bobby was examined by Dr. Charles McVea, who found no abnormalities. He thought that Bobby was in good condition and was essentially a normal child

Alleging that the above accident was caused by the negligence of defendant's employee, the present action was brought by Bobby's father for damages and expenses.

The defendant denied any negligence on the part of its driver; in the alternative, it pleaded that Robert McCandless was guilty of contributory negligence in darting into North Forty-fifth Street on his bicycle away from the intersection and directly within the path of defendant's truck, without seeing or heeding its approach, if he saw it, which he could and should have done.

The trial judge found that if any negligence could be imputed to Bobby McCand-

less, the truck driver had the last clear chance to avoid the accident. He was of the opinion that had the driver observed LSA–R.S. 32:235, the accident would never have happened. He stated:

"* * * Moreover, if the truck driver had made his turn to the right side and around the crossing of the center of the two streets as he should have done this would have placed the truck in his right lane of North 45th Street while he was still in Winbourne Avenue and in my opinion this boy would have cleared that lane in time and before the truck got to the sidewalk crossing. Whether that be true or not, the superior responsibility in this case was on defendant's truck driver. * * *"

The Court of Appeal agreed with the above statement of the trial judge and concluded:

"* * * We therefore agree with our brother below when he stated that it was his opinion 'from the evidence on the location of the truck at the time of the collision that defendant's driver violated the rules of the road in making his left turn from Winborn and particularly he violated that part of LRS 32:235 which required that the driver of a vehicle "* * * when intending to turn to the left shall approach such intersection in the lane of traffic to the right of and nearest the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning to the left."' Had defendant's driver done what he was supposed to do under the law the accident would not have occurred and therefore any contributory negligence on the part of the boy and holding that the driver of the defendant's truck did not have the last clear chance would not relieve the defendant of liability, for the proximate cause of this accident was the negligence of the driver of defendant's truck to make his left turn from Winborn into Forty-fifth Street in accordance with the law. Had he done so he would have been on his own proper side of the street and regardless of whether the boy darted out in front of him he would have passed in front of the truck before it could strike him. In addition, had the truck made the proper turn by traveling the added distance necessary to do so, there can be little doubt but that this boy would have been safely across the west, or south bound, lane of traffic." [101 So.2d 711.]

Defendant argues in this Court that the Court of Appeal grievously erred when it

made the above finding. It contends that the Court of Appeal erred in holding defendant's agent guilty of any negligence whatsoever and in not holding plaintiff's son guilty of negligence, which was the proximate cause of the accident. It urges that plaintiff is not entitled to recover damages.

The evidence of record is meager. Bobby McCandless was not called to the stand by either the plaintiff or the defendant. No one saw Bobby from the time he left the curb to cross North Forty-fifth Street until the moment of impact.

The gist of the truck driver's testimony is to the effect that he did not see Bobby until he was immediately in front of his truck. His testimony is as follows:

"Q. Well, where did he come from? Did he back into you? A. No, he came right in the front, straight across, I mean straight across the front of the truck. He was coming from—he was going east.

"Q. Going east? A. Yes.

"Q. And he was coming from the southwest corner of the intersection? A. Southwest? That's right.

"Q. That's right. There was no obstruction to your view, but you did not see him? A. I didn't see him until he got in front of the truck.

"Q. Did you look for pedestrians or a child before you made a turn or for anybody? A. Sure.

"Q. And you checked the area and did not see anybody? A. That's right.

"Q. You did not see him or anyone else? A. That's right.

\* \* \* \* \* \*

"Q. I am asking you this, Mr. Chaix: Are you certain that at the time you proposed to make this turn that there was no traffic bearing down upon you from the west? A. No.

"Q. Then, in fact, there was no reason for you to cut this corner abruptly to avoid another accident? A. How can I cut it abruptly?

"Q. And when did you first notice this child? A. After I turned in I was going in—I was in my turn. My truck was in—I was in 45th Street with my truck.

"Q. Was he moving? A. He—

"Q. Was he moving or standing still? A. He was moving on a bicycle.

"Q. When did you first observe his movements? A. When he got in front of the truck.

"Q. But you still don't know how he got there? A. No, I don't know how he got there."

Chaix stated that he had no time to swerve his truck; that he did not knock Bobby, and that Bobby stayed on his bike until the truck was stopped and then fell off, the bike being right in front of the truck. He further testified:

"Yes, sir, in fact, he did not exactly fall off the bike because he was straddling the bike when I took him off of it. I took him off of the bike and put him to the side of the road there was one other man, I don't know where the man came from, but the first thing he said he did not see the accident and he said, asked if there was anything he could do to help and I said, 'Yes, stay here with the child while I go phone.' "

Chaix was of the opinion that his truck was in the center of North Forty-fifth Street at the time of the accident. He said that he was looking at what he was doing, but he still did not see Bobby. He admitted that there were no obstructions to his view.

Mrs. James L. Pierce, whose home was located on the fourth lot from the intersection, testified that she saw the telephone truck turn the corner and that she saw the driver jump out and run to the little boy. She was asked, "Did you see the little boy on the bicycle as the truck was making the turn?" Her reply was that she did not see Bobby when he was hit, and that she did not see where he came from. She placed the truck in its wrong lane of traffic.

Mr. James L. Pierce did not see the accident, but he went to the scene shortly after it occurred. He placed the truck on the east side of the road going south on North Forty-fifth Street.

The investigating officers found the truck in the east lane of North Forty-fifth Street, and Officer Joseph F. Thomas fixed the point of collision eight feet west of the east parallel line of North Forty-fifth Street and about thirteen feet east of the west line.

Richard McCandless, Jr., who was thirteen years of age and in the sixth grade at the time of trial, testified that on the afternoon of the accident he, a friend, and his brother had gone to the dime store on Winbourne Street for his mother. All three were riding bicycles, and returning home they rode on the sidewalk on the south side of Winbourne Street in procession form. Bobby was in the lead, and Richard was in the center; they were talking to each other. It was their intention to cross the intersection and continue on the south side of Winbourne Street for another block before making a right turn. Richard said that he saw Bobby stop at the corner, saw him

start across the street, and saw him get hit by the truck. When asked whether he saw the Southern Bell Telephone Company truck, he replied that he didn't see it until it hit Bobby. He testified that there was traffic on Winbourne Street; he said that there were no obstructions at the intersection other than a telephone post. This post has not been claimed to be an obstruction. After the accident, Richard rode southward in front of the truck and went to his brother.

■ It is elementary and settled law that in a damage suit the burden of proof is on the plaintiff. Tadin v. New Orleans Public Service, Inc., 226 La. 629, 76 So.2d 910. In the instant case, plaintiff has proved that his child was hit by defendant's truck; he has proved that its driver violated LSA-R.S. 32:235;[2] he has proved that defendant's truck was not completely in its proper lane of traffic at the time of the accident. Affirmative and conclusive testimony was elicited to the effect that the truck driver did not see Bobby until the moment of impact.

■ The peculiar facts of this case do not warrant the application of the doctrine of "Last Clear Chance." Nowhere does the evidence disclose a situation of "Discovered Peril" and an opportunity to avoid the accident.

■ We believe that the fact that the driver did not see Bobby until he was directly in front of his truck constituted a violation of the well-recognized and settled rule that the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see, and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability. Jackson v. Cook, 189 La. 860, 181 So. 195. The evidence is conclusively clear that had Chaix been observing the entire proximity of the intersection, he would have seen Bobby and could have avoided the accident

" * * * In Maher v. New Orleans Linen Supply Company, Inc., La.App. 1949, 41 So.2d 101, the court stated motorists' duty to look ahead and observe never ceases; they must see what they can see and in legal contemplation do see, and their failure to see what

2. "Except as otherwise provided in this Section, the driver of a vehicle intending to turn to the right at an intersection shall approach such intersection in the lane for traffic nearest the right hand side of the highway, and in turning shall keep as closely as practicable to the right hand edge of the highway, and when intending to turn to the left shall approach such intersection in the lane for traffic to the right of and nearest the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning to the left."

they could have seen by exercising due diligence, does not absolve them from liability for resulting injuries to others. In determining whether a motorist has exercised due care, his conduct is to be gauged in connection with the particular conditions presented to him at the time of an accident, the speed at which he is driving, the control he maintains over his automobile, and the alertness of his observation must reasonably conform to the surrounding traffic conditions. Culpepper v. Leonard Truck Lines, Inc., 1945, 208 La. 1084, 24 So.2d 148; Lopreore v. New Orleans Public Service, Inc., La.App.1946, 27 So.2d 737. * * *" Pardue v. Norred, La. App., 95 So.2d 363, 365. See, Suire v. Winters, 233 La. 585, 97 So.2d 404; Ehtor v. Parish, La.App., 86 So.2d 543; LeBlanc v. Jones, La.App., 79 So.2d 750; Howard v. Great American Indemnity Company, La.App., 106 So.2d 539; Geoghegan v. Greyhound Corporation, 226 La. 405, 76 So.2d 412.

■ We conclude that the truck driver Chaix, who was driving at a maximum speed of ten miles per hour, was negligent in not exercising due care in observation; his conduct, gauged according to the condition of the intersection (a Doctors' Building allowing off-street parking at one corner and a children's play ground within the vicinity), was not of sufficient alertness to conform to surrounding conditions.

■ The evidence of record shows that it is possible that had Chaix not violated LSA–R.S. 32:235, he might have avoided the accident. Such violation certainly constitutes a lack of due diligence. We, therefore, conclude that the instant accident was caused by the negligence of the truck driver in not exercising due care at the intersection and in not observing what he could have seen and in legal contemplation did see.

■ Defendant did not offer any proof to show that Bobby was contributorily negligent. The affirmative facts set forth by plaintiff disclose no contributory negligence on the part of his son. There is no evidence of record disclosing the speed or path of Bobby's bicycle while it was in the intersection; nor is there any evidence reflecting that Bobby saw the truck before the impact.

"Contributory negligence is a defense which must be specially pleaded, and such a plea must be affirmatively established in order to prevail, unless it be shown by evidence relied upon by the plaintiff and when not so shown will not be presumed. Its pleader carries the burden of proving all facts necessary to its establishment to a legal certainty * * *" Kern v. Bumpas, La.App., 102 So.2d 263, 265. See, Aymond v. Western Union Telegraph Co.,

151 La. 184, 91 So. 671; Hamilton **v.** Lee, La.App., 144 So. 249.

Plaintiff relator urges that the judgment of the trial court should be reinstated, and that the award allowed by the Court of Appeal should be increased to $3,000.00.

Mr. and Mrs. McCandless testified that as a result of the accident Bobby was highly nervous with associated nausea and had never ridden his bicycle again. The medical testimony submitted at the time of trial was to the effect that Bobby was entirely recovered. There is also evidence showing that his progress in school was neither impeded nor delayed by the accident.

 The evidence reflects that at the time of the accident the truck driver treated Bobby with kindness and consideration. Bobby was taken to the hospital for overnight observation and later made at least four calls to the doctor. He suffered some discomfort, pain, and confinement, and also experienced a mild shock. We believe that an award of $1,500.00 is just and liberal.

No contention is raised with respect to the correctness of the allowance of $146.50 to plaintiff for medical expenses and the allowance of $50.00 each to the medical experts who testified.

For the reasons assigned, the judgment of the Court of Appeal, First Circuit, is affirmed. All costs are to be paid by defendant.