140 So.2d 34 (1962)
Tom J. FONTENOT et al., Plaintiffs-Appellees,
v.
Ollie J. WOOD, Jr., et al., Defendants-Appellants.
No. 535.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1962.
Rehearing Denied May 1, 1962.
Certiorari Denied June 4, 1962.
*35 Gold, Hall & Skye, by Leo Gold, Alexandria, for defendants-appellants.
Frugé & Foret, by Jack C. Frugé, Ville Platte, for plaintiffs-appellees.
Before SAVOY, TATE and CULPEPPER, JJ.
SAVOY, Judge.
In this case Mr. Tom J. Fontenot and his wife, Ollie Soileau Fontenot, seek damages for the death of their thirteen-year-old son, Tom Wayne Fontenot, who, while riding a bicycle on the highway, was struck from the rear by an automobile being driven by defendant, Ollie J. Wood, Jr. From an adverse judgment the defendants have appealed.
The accident occurred during a misting rain on December 9, 1960, at about 5:30 P.M. on U. S. Highway 167 approximately 1½ miles east of Ville Platte, Louisiana. At this particular location the highway runs generally east and west and had recently been resurfaced with blacktop 24 feet in width. The shoulders were still under construction, 3 or 4 inches lower than the blacktop and soft and muddy. Due to the construction, the speed limit was 45 MPH. The highway was straight and level for a considerable distance on each side of the scene of the accident.
The Fontenot boy had been to a grocery store and was returning home on his bicycle, riding in an easterly direction near the edge of the pavement in his own right-hand lane of traffic. The defendant, Mr. Wood, was also driving in an easterly direction at a speed of 45 to 50 MPH and saw the boy on the bicycle when he reached a point 300 to 400 feet to his rear. Mr. Wood had his lights on dim but stated that he could see the bicycle without his lights. He started to pass the boy, and actually moved into his left lane of traffic but, because of an oncoming car, being driven by a Mrs. Berzas, decided it was unsafe and turned back into his own lane to let the Berzas car pass. Mrs. Berzas testified that as she approached she saw the boy on the bicycle near the edge of the pavement in his own lane of traffic and she saw the oncoming car of Mr. Wood "swerve" out over the center of the road and back behind the bicycle. She was driving about 40 MPH with her lights on dim. She stated that as she passed the Wood vehicle "the distance was very short" between Mr. Wood and the bicycle and then she heard the accident.
The only eye witness to the collision itself was the defendant, Mr. Wood, who testified that after Mrs. Berzas passed him he had reduced his speed to about 30 MPH and was in his own right-hand lane of traffic behind the boy and that he then "barely touched" his horn and "proceeded to go around him" and was 75 to 90 feet from the boy when "he suddenly cut into my lane of traffic there, and of course I put on the brakes, but apparently it was too late."
The Wood vehicle left skid marks from its wheels on both sides; the right-hand skid marks starting at a point 3 feet from the right edge of the pavement and going diagonally to the left toward the center of the road a distance of 58 feet to the point of impact. At the time of the impact, the Wood vehicle was straddling the center of the road with the center of the front end about at the center of the highway and the rear of the vehicle angled to the right. A dent in the hood of the car, admittedly made by the impact, was located between the center and the right side of the hood, which indicates that the bicycle, at the time of the impact, was near the center of the highway, but in the right lane of traffic. The bicycle was struck from the left rear. After the impact, the Wood vehicle skidded an additional 3 feet and came to rest with the left front wheel in the left lane and the right front wheel almost on the center line of the *36 highway. The bicycle came to rest a short distance in front of the car and in the westbound lane of traffic. The boy's body was found by Mrs. Berzas and Mr. Wood approximately in the center of the highway.
Defendants' first argument is that no actionable negligence on Wood's part has been proved. They cite Lawrence v. Core, (Ct.App., 3 Cir., 1962), 132 So.2d 82, which holds that under the Louisiana "rules of the road", LSA-R.S. 32:1(27), a bicycle is a vehicle and as such subject to all traffic regulations for vehicles. Defendants cite Nomey v. Great American Insurance Company (Ct.App., 2 Cir., 1960), 121 So.2d 763, and other cases for the proposition that failure to maintain a specified distance between vehicles does not of itself constitute negligence, and that a driver is entitled to rely upon the assumption that the vehicle ahead is being driven with care and caution in accordance with the law of the road and that the driver thereof will not commit acts of negligence which will endanger the following traffic. Under this jurisprudence defendants argue that after the Berzas vehicle had passed Wood and the bicycle, Wood started, from a distance of 75 to 90 feet, to go around the bicycle, which occupied a safe position in the highway, but that the bicycle then turned suddenly to the left, thereby creating an emergency from which Mr. Wood was unable to extricate himself.
In our opinion, the answer to this argument by defendants is that the 61 feet of skid marks, left by the Wood vehicle, started at a point only 3 feet from the right edge of the pavement, which clearly shows that Mr. Wood had not started to go around the bicycle even at the moment the brakes began to skid, much less at the moment that the brakes were applied, which necessarily was several feet farther back. We, therefore, conclude that Mr. Wood did not apply his brakes or start skidding after he started to go around the bicycle, but that on the other hand, his brakes were applied and the skid marks started before he turned to the left to pass the bicycle. Having reached this conclusion of fact, it is apparent that the emergency which caused Mr. Wood to apply his brakes was that initially, when he was 300 to 400 feet from the bicycle, he misjudged the speed of the oncoming vehicle or the distance needed to pass the bicycle; he first decided to pass the bicycle, then became cognizant of his error and moved back into his own lane of traffic where he found he was too close behind the bicycle and had to apply his brakes. Under the evidence, no other reasonable explanation can be given for Mr. Wood's application of his brakes, since we have already found above that the reason could not have been that the boy turned his bicycle to the left after Wood started passing it. Mr. Wood was, therefore, guilty of not keeping a proper lookout and driving at an excessive rate of speed under the circumstances. LSA-R.S. 32:234 requires that "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and the condition of the highway." In the instant case, Mr. Wood failed to properly observe the speed of the bicycle, the speed of the oncoming vehicle, and the distance required for his passing the bicycle. Because of these errors of judgment, he initially started to pass the bicycle when actually, at the time, he should have slowed down. This negligence by Wood was clearly a cause of the accident.
Although it is our opinion that a preponderance of the evidence in this case shows defendant was guilty of negligence, causally related to the collision, we think there is also applicable here the ruling of our Supreme Court in the recent case of Felt v. Price, 240 La. 966, 126 So.2d 330, wherein the court interpreted LSA-R.S. 32:233 to mean that wherever an overtaking and passing motor vehicle is involved in an accident with an overtaken vehicle, a prima facie case of negligence is shown, and the burden is shifted to the driver of the overtaking vehicle to establish his freedom *37 from fault. Pertinent portions of the opinion and footnotes read as follows:
"At all events, he became prima facie responsible for the results of the overtaking and passing maneuver, as Subsections A, C and F of R.S. 32:233 provide that:
"`A. The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.'
* * * * * *
"`C. The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety. Whenever an accident occurs under such circumstances,3 the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing.'

* * * * * *
"`F. The driver of a vehicle who has been given adequate warnings by an overtaking and passing vehicle, shall promptly give way to his right in favor of such overtaking and passing vehicle and shall not increase the speed of his vehicle until it has been completely overtaken and passed. Nothing herein shall mitigate against the provisions for prima facie responsibility in Subsection C.' (Italics ours.)
* * * * * *
(Footnote 3)
"The `circumstances' to which the statute refers could be construed literally to mean situations in which the overtaking and passing is attempted when the road ahead is not clear of oncoming vehicles. But, as indicated in our recent opinion in Thornton v. F. Strauss & Sons Inc., 240 La. 455, 123 So.2d 885, we do not think a fair reading of R.S. 32:233C justifies such a narrow interpretation. Indeed, when the provisions of Subsection C are read in connection with Subsections A and F, we think it manifests a legislative intent to impose a prima facie case of responsibility upon all overtaking and passing motor vehicle drivers, who are involved in accidents with overtaken vehicles, as well as collisions with vehicles approaching from the opposite direction."
In the instant case, Mr. Wood was overtaking and passing the bicycle when he struck it. Under the holding of the Felt case, supra, the mere happening of the accident, under such circumstances, establishes a prima facie case of negligence on the part of Mr. Wood and places the burden on him to show his freedom from fault. He has failed to sustain this burden for the reasons stated above and set forth more fully in the following discussion of contributory negligence.
Having found that Mr. Wood was guilty of actionable negligence, we will next consider the plea of contributory negligence on the part of the Fontenot boy who was 13½ years of age at the time of the accident, and of better than average intelligence and therefore legally capable of negligence. See Lawrence v. Core, (Ct.App., 3 Cir., 1961), 132 So.2d 82. As stated above, Mr. Wood testified, "Well, I proceeded to go around him and suddenly he cut into my lane of traffic there, and of course I put on the brakes, but apparently it was too late." In our opinion, the Wood vehicle's skid marks, which were found and measured by a state trooper immediately after the accident, show conclusively that Wood was not in the process of passing the bicycle when the brakes were applied, and we, therefore, cannot accept as correct his testimony that the reason for the application of his brakes was that the Fontenot boy *38 suddenly "cut into my lane of traffic there." As stated above, the skid mark left by the right wheel of the Wood car started at a point only 3 feet from the right-hand edge of the pavement, which means that at the time Wood's brakes started skidding, his vehicle was almost exactly in the center of his right-hand lane of traffic. Of course, the brakes were applied 30 to 40 feet before the tires started skidding, and the evidence does not show how close to the right edge of the pavement the Wood vehicle was at the exact moment of application of its brakes; but, it must have been closer than 3 feet because after the skidding started, the car went to the left. A further material fact is that there was no building, side road or anything else on the left side of the highway, toward which the boy might have had a reason to turn. The jurisprudence is clear that one who pleads contributory negligence in an attempt to bar recovery has the burden of proving such negligence by a preponderance of the evidence. See McCandless v. Southern Bell Tel. & Tel. Co., 239 La. 983, 120 So.2d 501, and the cases cited therein. In our opinion, defendant has failed in his burden of proving that this emergency was caused by the Fontenot boy turning left into Wood's lane of travel. Of course, we are aware of the testimony of Mrs. Berzas that when she passed the bicycle it was near the right side of the highway, and of the evidence which shows that by the time of the impact the bicycle had moved near, but not across, the center of the highway. However, the most logical and plausible explanation for this is that the boy became aware of the emergency created by Mr. Wood and was trying to get out of the way of the Wood vehicle.
Addressing ourselves now to the issue of quantum, we find that the lower court awarded the father and mother each $12,000 for the loss of their minor child, plus the sum of $3,000, divided between them, for the physical pain and suffering of the boy, from the time of the accident until his death approximately 24 hours later. Special damages of $1,569.50 for medical and funeral expenses were stipulated and are not in dispute.
As to the award to the parents for the loss of their child, it is the contention of counsel for the defendants that the lower court simply followed Palmer v. American General Ins. Co., (Ct.App., 1 Cir., 1961), 126 So.2d 777, which case defendants argue is not in line with other jurisprudence. Defendants apparently contend that where there are two surviving parents the award should be less. They cite Boyd v. Sutton, (Ct.App., 2 Cir., 1960), 120 So.2d 350, in which $7,500 was awarded to each parent and Honeycutt v. Indiana Lumbermens Mutual Ins. Co., (La.App., 3 Cir., 1961), 130 So.2d 770, in which each parent was also awarded $7,500 for the loss of their child. We note that in both of these cases, the appellate court simply affirmed the lower court's award as being neither inadequate nor excessive.
The pertinent facts of the instant case show that Mr. and Mrs. Fontenot were married in 1938, and it was not until 1949 that they had their first and only child, the boy killed in this accident. At the time of trial, Mr. Fontenot was 54 years of age and Mrs. Fontenot was 53 years of age, and it is extremely unlikely that they will ever have another child. Young Tom Fontenot was of above average intelligence and the evidence shows that this was a close, affectionate family, living happily together on a small farm in a rural area. In our opinion, the award of $12,000 to each of the parents is neither excessive nor inadequate, and is fully supported by awards made in similar cases. In Randall v. Baton Rouge Bus Company, (1960), 240 La. 527, 124 So. 2d 535, $12,000 per parent per child was awarded. In the recent case of Renz v. The Texas & Pacific Railway Company, (La.App., 3 Cir., 1962), 138 So.2d 114, this Court awarded $12,500 to a mother for the loss of her child. In Himes v. Avinger, (Ct.App., 2 Cir., 1956), 85 So.2d 304, the court awarded $10,000 to each parent of a 15-year-old boy who was an excellent student and had a very close family relationship *39 to his parents. In the recent case of Little v. Safeguard Insurance Company, (La.App., 3 Cir., 1962), 137 So.2d 415, this Court reduced from $17,500 to $7,500 an award to the father of a 14-year-old girl, but the evidence showed that the child had not lived with her father since infancy, that the father had married a second time and had other children, and seldom saw the deceased child.
We next address ourselves to the complaint made by counsel for defendants that the award of $3,000 to plaintiffs because of the pain and suffering of their son from the time of his accident to his death, is unjustified because the evidence shows that during this entire period of time the youth was either unconscious or "semi-comatose" and did not suffer any pain. Defendants base their argument on the testimony of Dr. Joseph D. Edelman, a neurosurgeon, who was of the opinion that young Fontenot was "semi-comatose", namely, that he could be aroused, but never became fully conscious during the time he was under his care. However, Dr. Edelman did not see the patient until about five hours after the accident, whereas Dr. Dupre and his registered nurse, Mrs. Beulah Richard, saw the youth shortly after the accident and both testified that he followed instructions which they gave him. Mrs. Richard accompanied young Fontenot in the ambulance ride from Ville Platte to Baton Rouge. She said that when she told him to keep quiet he did so. She asked him where he was hurt and he placed his hand on the head injury. While in Baton Rouge, the boy indicated by signs that he wanted water.
From the evidence adduced in the instant case, we are of the opinion that young Fontenot had pain and suffering because of the accident. We feel that an award of $3,000 is excessive and hereby reduce the award for pain and suffering to the sum of $1,000.
For the reasons assigned, the judgment of the district court is amended by reducing the award made by the district court for pain and suffering from the sum of $3,000 to the sum of $1,000 and as amended, the judgment is affirmed at appellants' costs.
Amended and affirmed.
CULPEPPER, Judge (concurring in part and dissenting in part).
I concur with the majority opinion except for the award of $1,000 for pain and suffering of the boy, between the time of the accident and the time of his death about 24 hours later, because the evidence shows that during this entire period of time he was either unconscious or "semi-comatose" and did not suffer any pain. Generally, our jurisprudence is to the effect that in order for survivors to recover for the pain and suffering of the decedent, it is necessary to show that the decedent did, in fact, suffer such pain and suffering before death. See Palmer v. American General Insurance Co., La.App., 126 So.2d 777 and the cases cited therein. Reviewing the testimony of all of the witnesses who touched on the issue, we find the ambulance driver who went to the scene of the accident testified that the child was unconscious; Mrs. Beulah Richard, a nurse in the Dupre Hospital in Ville Platte, to which the boy was first taken, testified that she cared for the boy in Ville Platte and went with him in an ambulance to Baton Rouge later that night and saw him the next day and that during all of this period of time the boy was in a "semi-comatose" condition; that he responded to her requests to be quiet and while in Baton Rouge actually took a little nourishment, but that he never talked: Dr. R. E. Dupre saw the boy for approximately two hours in Ville Platte and testified that during this time he was "almost completely unconscious"; that he thought the boy understood what was said to him, but he couldn't answer and he was restless and fighting for breath; Dr. Joseph M. Edelman, the neurologist who treated the boy in Baton Rouge testified that he was "semi-comatose", i. e., that he could be aroused, but never became fully *40 conscious. Dr. Edelman testified that patients in such a condition, caused by head injuries, have no recollection of pain after they have regained consciousness and that therefore, in his opinion, they do not suffer pain. We find Dr. Edelman testifying as follows:
"Q. Now, Doctor, then would it not be a fair statement that a person who is unconscious or semi-comatose from head injury either suffers no pain, or is not aware of the pain, during the period of unconsciousness?
"A. I think that is a fair statement, yes, sir.
"Q. And, applying that opinion to this particular case, would it not be a fair statement that in your opinion, in this instance, the patient either suffered no pain or was unaware of pain during the period of time that he was under your care?
"A. Yes, sir, I would think that is accurate."
All of the witnesses who saw the boy, from the time of the accident until his death, testified that he was either unconscious or in a semi-comatose condition during this entire time. Dr. Edelman, the only expert medical witness to express an opinion on the subject, testified that this boy, who was in such a condition from a head injury, "either suffered no pain or was unaware of pain."
The issue, of whether or not a person who is unconscious or semi-comatose from a head injury suffers pain, is a medical question. I think the court should follow the doctor's opinion on the subject where there was no dispute as to the facts, when the doctor knew the facts and there was no contradictory opinion by any other doctor. It appears to me that the majority opinion in the instant case has substituted its opinion for that of a highly qualified expert, on a matter which is within the expert's field of knowledge and experience. It is my opinion that there is no evidence in this case to justify the award for pain and suffering.
I respectfully concur in part and dissent in part.

On Application for Rehearing.
En Banc. Rehearing denied.
FRUGÉ, J., recused.
CULPEPPER, J., is of the opinion a limited rehearing should be granted for the reasons stated in his dissenting opinion.