**GLOBE INDEMNITY COMPANY,**
Appellant,

v.

**Graham Edward RICHERSON, Individually and as Guardian Ad Litem for the Minor, Larry Don Richerson, Appellee.**

No. 20002.

United States Court of Appeals
Fifth Circuit.

March 21, 1963.

4

Richard H. Switzer, Shreveport, La., Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, La., of counsel, for appellant.

James J. Thornton, Jr., L. L. Lockard, Shreveport, La., Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, La., of counsel, for appellee.

Before CAMERON, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The questions on this appeal are whether there was sufficient affirmative evidence to support the jury's implied finding of negligence, and whether the trial Judge erred in refusing to instruct the jury that the injured boy was guilty of contributory negligence as a matter of law. We think there was no error in the refusal of the charge of contributory negligence, and that the evidence is sufficient to support the verdict.

This personal injury suit arises out of a truck-motor scooter collision by which a formerly normal fourteen-year-old boy now just exists. The boy's father, individually and in his representative capacity as guardian ad litem, sued the liability insurer of the truck under the Louisiana Direct Action Statute.[1] The jury returned a verdict in Plaintiff-Appellee's favor in the sum of $15,000 in his individual capacity for hospital and doctor's expenses, medicines, etc., and in his representative capacity in the sum of $60,000. This appeal follows.

The injured boy is the only child of Plaintiff and his wife. While no attack is made on the amount of damages allowed or the fact of undisputed severe

_____
1. La.Stat.Ann.-Rev.Stat. Title 22 § 655.

injuries, the boy's resulting physical-medical condition bears on the question of the occurrence because it forecloses one usual source of evidence. At the time of the accident he was a normal, healthy, somewhat large, boy of 14. At the time of trial, he was emaciated, could not speak, could not eat and could not control his extremities sufficiently to even turn over in the bed in which he is confined. He survives through forced feeding. It is undisputed that this change was brought about by this collision. The collision occurred when the boy, riding his motor scooter, ran into the back of a 1½-ton truck being driven by Dan White, an employee of the same plantation for which the Plaintiff worked. On the day of the tragedy, the boy had ridden his scooter to the fields in close proximity to his house. White was also there in the light truck delivering parts for some broken down equipment. The boy started back to his house. He traveled in an easterly direction on a gravel road and turned north onto Highway 71. Highway 71 was in need of repair. Except for use by farmers in the vicinity, it had been abandoned for general purposes. White's truck left the field soon after the boy. After turning onto Highway 71, White honked his horn and passed the boy. Through his rearview mirrors, White could see it was safe to cut back over into the right hand lane. This he did and shortly thereafter the motor scooter collided with the rear of the truck.

The entire controversy revolves around what White did after his truck cut back in front of the boy. No one actually saw the accident except the boy and his lips are sealed. White's testimony revealed that he had made two written statements concerning the accident—one to an insurance adjuster and one to an investigator for the Plaintiff. In one statement White said he had passed the boy and was maintaining his normal speed (approximately 25 m. p. h.) when he was struck from the rear. In the other statement White said he had passed the boy and upon seeing a fellow worker in an adjacent field apparently having tractor trouble, had stopped his truck on the highway.

Prior to the trial, White moved to California. His oral deposition was taken there.[2] In his deposition, which was introduced in full at the trial, White denied the correctness of the prior statements. He gave a still different version of the accident. He testified that he passed the boy at about 25 m. p. h. and angled back over to the right lane. At this time he saw a fellow worker in an adjacent field. Without applying his brakes, White allowed the truck to gradually slow down to about 5–10 m. p. h. The next thing he knew, he was struck from the rear. He stopped the truck and ran back to ascertain what had happened. Although pressed considerably in the double-barrelled cross-examination of both sides, White was unable to state how far he had traveled after overtaking the boy, or what their relative positions were at any time thereafter.

The Defendant urges upon us here that this is the only evidence as to what happened and this being true, it will not support the jury's verdict. Defendant asserts in effect that the jury had either to believe White or disbelieve him. To believe him proves no negligence on his part. To disbelieve him will not support a verdict as there is no other affirmative evidence showing negligence. In this connection stress is placed on Dowell, Inc. v. Jowers, 5 Cir., 1948, 166 F.2d 214, 2 A.L.R.2d 442; State v. Bodoin, 153 La. 641, 96 So. 501; Kiernan v. National

2. By formal pre-deposition order the Judge made White a witness of the Court and expressly allowed Plaintiff (as well as Defendant) to cross examine him on this deposition. The Court's action was assigned as error here. However, as the record shows that White was an addi-tional assured under the liability policy, the Defendant candidly recognized on oral argument that this asserted error collapsed under our recent decision in Degelos v. Fidelity & Casualty Co., 5 Cir., 313 F.2d 809.

Surety Corp., La.App., 1955, 79 So.2d 407.

While we may agree with the basic contention that impeachment destroying credibility will not supply the essentials of a case, we do not think this is determinative here. A jury is ordinarily entitled to believe all, any part of, or none of a witness' testimony. In the effort to piece together what actually happened, the jury may look to other evidence. Here the Plaintiff, the Plaintiff's wife, a neighbor, and a Highway Patrolman each testified that upon reaching the scene a few minutes after the accident happened, the scooter was only 3 to 5 feet away from the truck. There were single skid marks (which all concede were left by the scooter) leading up to the rear wheel of the scooter. These skid marks were 18–21 feet long. It is very important to emphasize that these skid marks led all the way to the rear wheel of the scooter. In contrast to this, White testified that when he brought the truck to a stop, the boy and scooter were about 15 feet away. This discrepancy, once resolved by the jury, could have been decisive. As a part of it, the jury had White's story that when he heard the noise of the impact of the scooter against the rear of the truck, he then applied the brakes. From general experience and knowledge the jury could conclude that it would have been a physical impossibility for White to have brought the truck to a complete stop in the 3 to 5 feet separating the scooter from the truck. The jury was, however, fully justified in fixing the interval at 3 to 5 feet. On doing so, they were entitled to consider the other probable explanations. Considered in the context of White's categorical acknowledgment that after commencing to overtake the scooter he never thereafter kept any lookout as to the boy's position in relation to the truck, it was permissible for the jury to conclude either that

White actually brought the truck to a quick stop when the scooter was 18 to 21 feet away, or that he abruptly commenced to do so. White made no suggestion that in stopping he gave any signal or warning whatsoever. Yet he knew that the scooter was behind him. He could, of course, assume that the boy would keep a reasonable lookout for evident changes in the course and speed of the truck and adjust his speed and position accordingly. But once the jury rejected White's version of the manner in which he brought the truck to a stop, it was not just the ordinary case of an absence of evidence. The very act of credibility resolution compelled some explanation for the admitted physical occurrence other than that advanced by him. One inherently reasonable explanation was that White brought his truck to a stop by using the brakes and, just as he testified, in using the brakes the truck would (and did) stop quickly.[3] This was certainly sufficient to take Plaintiff's case to the jury, and as a corollary thereof, it was sufficient to support the jury's determination that White was negligent. Great American Ins. Co. v. Cutrer, 5 Cir., 1962, 298 F.2d 79; American Automobile Ins. Co. v. Wainwright, 5 Cir., 1960, 284 F.2d 942; cf. Continental Casualty Co. v. Stokes, 5 Cir., 1957, 249 F.2d 152.

We find no real merit in Defendant's contention that the trial Judge should have instructed the jury that the boy was guilty of contributory negligence as a matter of law. Since we have determined that the jury could reasonably find that after passing the boy White stopped or altered the forward movement of the truck without adequate warning, a determination now that the boy was contributorily negligent as a matter of law would be tantamount to a holding that a passing vehicle owes *no* duty to overtaken vehicles. On this the passing vehicle could cut immediately in front of the overtaken

3. In this connection, the Judge without exception by Defendant charged the jury that "It is negligence for a driver to bring his vehicle to a sudden stop or suddenly to decrease the speed of his vehicle without giving any signal of his intention to stop or slow if he knows, or reasonably should have known, of the presence of a vehicle closely following."

vehicle, come to a dead stop and no liability would follow. This is certainly not the law of Louisiana.[4] Louisiana rulings declare that a passing vehicle owes the duty of care to other vehicles which does not shift to the *following* vehicle (the overtaken vehicle) until the passing has been safely made.[5] Indeed, this was in the Judge's charge to the jury. For the reasons discussed above, there is ample evidence from which the jury could have concluded that White breached this duty either to proceed a safe distance after the initial passing before altering speed substantially or at least giving timely adequate warning of his purpose to do so.

In resolving this controversy, the jury was charged by the Court that where a plaintiff's lips are sealed because of death or disability, a rebuttable presumption arises that "he complied with the law in every respect in all of his actions prior to the accident." This was not objected to by Defendant and no question has been raised before us.[6] To this was added the recognized Louisiana principle that contributory negligence is a defense which requires affirmative proof on the part of the defendant, e. g., McCandless v. Southern Bell Tel. & Tel. Co., 1960, 239 La. 983, 120 So.2d 501; Fontenot v. Liberty Mutual Ins. Co., La. App., 1961, 130 So.2d 462; Kern v. Knight, 1930, 13 La.App. 194, 127 So. 133. The Judge gave a full and complete charge on contributory negligence. By the jury's verdict, they found no contributory negligence on the boy's part. There it ends.

Affirmed.

4. Defendant has cited us a number of cases discussing the duty of care applicable to a *following* vehicle; e. g., State Farm Mutual Automobile Ins. Co. v. Yszara, 5 Cir., 1959, 263 F.2d 937; Smith v. Fidelity Mutual Ins. Co., 5 Cir., 1953, 206 F.2d 549; McCandless v. Southern Bell Tel. & Tel. Co., 1960, 239 La. 983, 120 So.2d 501; Pinchera v. Employers Casualty Co., La.App., 1954, 73 So.2d 623.

5. Felt v. Price, 1961, 240 La. 966, 126 So. 2d 330; Thornton v. F. Strauss & Son, Inc., 1960, 240 La. 455, 123 So.2d 885;

Fontenot v. Wood, La.App., 1962, 140 So.2d 34; Reeves v. Caillouet, La.App., 1950, 46 So.2d 373.

6. See Parsons v. Blount Brothers Construction Co., 6 Cir., 1960, 281 F.2d 414; Eastern Air Lines v. Union Trust Co., 1955, 95 U.S.App.D.C. 189, 221 F.2d 62; United States v. Wibye, 9 Cir., 1951, 191 F.2d 181; Stansbury v. Mayor & Councilmen of Morgan City, 1955, 228 La. 880, 84 So.2d 445; Tassin v. Downs, La. App., 1939, 190 So. 232; Kern v. Knight, 1930, 13 La.App. 194, 127 So. 133.