BAILES, Judge.
This is an appeal from the judgment of the trial court rejecting the demands of the plaintiffs for damages allegedly due them for the wrongful death of Louis Joseph Saucier, husband of Mrs. Adelaide Falgout Saucier, who appears herein individually and as legal representative of her five minor children. The other plaintiff is the married daughter of the decedent. The trial court rejected the demands of the plaintiffs for the reason that they failed to sustain the burden of proof that the decedent met his death by reason of the actionable negligence of Andrew H. Bonnette, driver of the automobile which struck and killed Mr. Saucier. The defendants are Andrew H. Bonnette, the employer of Bon-nette, Offshore Food Service, Inc., and its liability insurer, Aetna Casualty and Surety Company. Also named as defendant was the automobile public liability insurer of Mr. Bonnette’s personal vehicle, Grain Dealers Mutual Insurance Company. We find the judgment appealed from is correct and, accordingly, it is affirmed.
The facts are that on Sunday, February 27, 1966, Mr. and Mrs. Francis Granier, together with Mr. and Mrs. Louis J. Saucier, and a Mrs. Mary Murray, after an afternoon and evening of visiting friends and relatives, at approximately nine o’clock p. m., left Al and Marie’s Bar, a bar and lounge located on the south side of U.S. Highway 90 in St. Charles Parish, Louisiana, headed in the direction of Houma, Louisiana, near which city they expected to visit decedent’s cousin who only recently had given birth to a new baby.
*452 The fatal accident to Mr. Saucier occurred on U.S. Highway 90. The highway at this place is of four lanes, two of which are for east bound traffic and two for west bound traffic. A median or neutral ground separate the east and west bound lanes, while we find no testimony or proof of the width of the median strip, from the photographs in evidence, it appears that this area is about four to five feet wide. The vehicle in which the party was traveling was owned by Mr. Francis Granier, and at this time he was driving. It is established that in driving from the parking area of Al and Marie’s Bar, Mr. Granier, either because of the downpour of rain or for some other reason, became confused or his vision was obscured and he found himself driving west in the east bound traffic lane. When he became aware of his position in the highway he attempted to drive across the neutral ground whereupon his vehicle bogged in the wet ground about 700 feet west of A1 and Marie’s Bar. The surviving occupants of the Granier vehicle testified that the vehicle was located wholly within the median, however, the state trooper who investigated the accident testified that the front and rear left wheels of the station wagon were extending about eighteen inches into the inside east bound traffic lane.
When it became obvious that the Granier vehicle was stuck in the mud, Mr. Saucier got out of the car and first went to the front of the vehicle. Shortly thereafter he was found dead about seventy feet in the rear of the station wagon. The testimony of the four occupants of the Granier vehicle varies considerably as to what occurred after the decedent got out of the vehicle.
The driver, Francis Granier, testified that decedent got out of the front seat of the vehicle and proceeded to the front where he attempted to shove the vehicle, that he started waving at him not to race the motor and after that decedent was gone and he did not again see him alive. It was immediately after decedent disappeared from in front of the vehicle that he heard a “thump”. During all this time, he testified it was “pouring” rain. In point of time, immediately after Saucier disappeared, Gra-nier testified he got out of his car and went back to Al and Marie’s to call the police or a wrecker to get out of the bog. Further, Granier testified that he did not see any vehicle approach his car headed east toward New Orleans and that he did not see Saucier struck by any vehicle and that he did not. know where Saucier was when he was hit.
Mrs. Shirley Granier, wife of Francis Granier, was sitting on the rear seat of the station wagon and her testimony is that all she knew about the accident was that Saucier got out of the vehicle and she never saw him alive again. At some time after Saucier got out of the vehicle, she stated she heard a “big” thump, and that it was raining hard when she heard the thump.
Mrs. Mary Murray testified that Mr. Saucier got out and went to the front of the car, that “I seen him in front and then I didn’t see him no more after that.” She stated she felt a thump and heard a thump, but she did not see any east bound vehicle approach the Granier car and did not see Saucier when he was struck.
Plaintiff, Mrs. Saucier, stated that her husband got out and went to the front of the car; that the headlights were on and she could see her husband as he stood in front; that he kneeled down and when he got up “ * * * all of a sudden there was nothing but lights. There was just lights and I started screaming.” She stated she did not see any car approaching but she did see very bright lights and she saw her husband’s legs going through the air.
The state trooper arrived shortly after the accident occurred to make his investigation. During the course of his investigation he radioed his station that there had been a “hit and run” accident. Immediately after the broadcast of this radio report, the defendant, Andrew H. Bonnette contacted the Chief of Police of Westwego and stated that he had apparently struck something on *453 the highway and asked his assistance in determining what had occurred. According to the testimony of Mr. Bonnette he noticed some damage to his windshield. for the first time when he drove under some overhead lights as he approached West-wego. The chief of police related what he was told by Mr. Bonnette to the radio report he had heard of a hit and run accident and suggested to Mr. Bonnette that he should return to the scene of the accident.
Defendant, Bonnette, denied any knowledge of having previously struck Saucier. He testified that he was driving between 50 and 60 mph in the inside traffic lane and that he did not recall feeling any bump or any action of his automobile which he might associate with striking Mr. Saucier. He stated the only thing he felt or heard was water splashing against the fender guards.
On examination of Bonnette’s automobile it was found that the left headlight was broken and the rim of the light was bent as well as a small dent in the front portion of the left front fender, a web-like fractured place on the left side of the windshield, and the rear view mirror was missing.
The trial court concluded from the testimony that Mr. Saucier was struck at some time after reaching the rear of the Granier vehicle; that Mr. Bonnette had to be aware of having struck something in the highway, although the court did believe that Mr. Bonnette was not aware that he had struck a human being, and further it concluded that it was impossible to reach any conclusion as to the whereabouts of Mr. Saucier at the time he was struck or in what manner he reached the point of impact with the Bonnette vehicle. The conclusion of the trial court was that there was no proof of any actionable negligence on the part of Mr. Bonnette and that the plaintiffs did not sustain the burden of proof. In these conclusions, we agree.
In seeking the reversal of the judgment adverse to their cause, plaintiffs assign two specifications of error. First, they argue that Mr. Bonnette was guilty of negligence which proximately caused the accident in that he was not keeping a proper lookout and that he was not driving within the range of his headlights. Secondly plaintiffs argue the trial court erred in failing to give proper weight to circumstantial evidence which established Mr. Bonnette’s negligence.
Their argument to support the first specified error of the trial court is grounded in the evidentiary fact that the heavy rain which was falling at the time of the accident and which necessarily hampered Mr. Bonnette’s vision imposed on him an unusually high degree of care, and they cite the case of Hernandez v. State Farm Mutual Automobile Insurance Company (1966), La.App., 192 So.2d 679.
The holding of the court in the Hernandez case which plaintiffs urge us to apply is that when visibility is materially impaired because of smoke, mist, dust, fog or other atmospheric conditions, a motorist is held to a duty of operating his vehicle with an unusually high degree of care. We find this pronouncement of the law is not applicable to the facts of the instant case. First, there is no showing that visibility insofar as Bonnette was concerned was so impaired as to require him to operate his vehicle with an unusually high degree of care. Under the circumstances, he was required to exercise reasonable care. In the cited case, the vehicle which plaintiff struck was parked or stopped in his lane of traffic and he was driving in an extremely dense fog. In the instant case such was not the fact.
Plaintiff also cites McCandless v. Southern Bell T. & T. Co. (1960), 239 La. 983, 120 So.2d 501, and argue that the holding of the court therein that the failure of the driver of defendant’s truck to see the child until he was directly in front of his truck constituted a violation of the well-recognized and settled rule that the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what *454 they can see they must see, and m legal contemplation they do see; that their failure to see what they could have seen by the exercise or due diligence does not absolve them from liability is controlling herein. We hold to the contrary. The McCandless case involved an accident at an intersection, not on a four-lane super highway, during the daylight hours, not on a dark rainy night, between a youth on a bicycle and a telephone company truck, not between a passenger car and a man on foot dressed in dark clothes. In the instant case there is not one scintilla of evidence that deceased Saucier was ever in a position to be visible to Bonnette or that he was ever in front of his vehicle.
Next, plaintiffs urge that the trial court erred in not giving proper weight to circumstantial evidence which established Bon-nette’s negligence. Suffice it to say that we find no circumstantial evidence which establishes negligence on the part of Bon-nette. There is no proof whatever that Bonnette struck the Granier car. The fact that a piece of chrome trim was found does not establish that Bonnette struck the Gra-nier vehicle. This could have been dislodged from the vehicle when the wrecker pulled it from the bog. The fact that Saucier’s body was found 69 or 70 feet in rear of the Granier car does not prove negligence on Bonnette. There is no evidence to support a finding that Bonnette was driving under the influence of an intoxicant. The trooper testified he smelled no odor of alcohol on Bonnette.
We readily recognize that negligence can be established by circumstantial evidence. See Naquin v. Marquette Casualty Company (1963), 244 La. 569, 153 So.2d 395. In instant case there is no circumstantial evidence which excludes other reasonable hypotheses with a fair amount of certainty that the action of Bonnette, even if assumed to be proof of negligence, was a proximate cause of the death of or injury to Saucier.
We agree with the trial court that plaintiffs have failed to discharge the burden of proof to establish by a fair preponderance of the evidence that the alleged damages were caused by actionable negligence of Bonnette.
For the foregoing reasons, the judgment appealed from is affirmed at appellants’ cost.
Affirmed.