161 So.2d 322 (1964)
Gilven CHRIST, Plaintiff-Appellee,
v.
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Defendant-Appellant.
No. 977.
Court of Appeal of Louisiana, Third Circuit.
February 18, 1964.
Rehearing Denied March 11, 1964.
Writ Refused May 4, 1964.
*323 D. Ross Banister, Philip K. Jones, Norman L. Sisson, Thomas A. Warner, Jr., William J. Doran, Jr., by William J. Doran, Jr., Baton Rouge, for defendant-appellant.
J. Nilas Young, Eunice, and Frugé & Foret, by Jack C. Frugé, Ville Platte, for plaintiff-appellee.
Before TATE, SAVOY, HOOD, CULPEPPER and CARROL L. SPELL, JJ.
TATE, Judge.
This is a personal injury suit. The plaintiff motorist claims damages allegedly caused by insufficient warning of a repair-obstruction in the traveled lanes of a highway maintained and repaired by the State Department of Highways. The defendant highway department appeals from judgment awarding recovery to the plaintiff.
The accident occurred in a semi-rural area within the incorporated limits of Basile in Evangeline Parish. It occurred on Highway 190, one of the most heavily traveled highways in the state, which at the place of the accident was only a two-lane thoroughfare. The speed limit at the place of the accident was 50 mph for trucks and 60 mph for passenger vehicles.
The accident happened at about 8:00 P.M., after dark. It was caused when the plaintiff motorist ran off the highway upon being suddenly confronted with a barricade across his path. He was driving a pickup truck at the time, and thus the applicable speed limit as to him was 50 mph.
The principal question of this appeal is whether the defendant Department was negligent in failing to provide adequate warnings of the excavation in the highway pavement and of the consequent obstruction to traffic in that lane created by its repair activities earlier that day.
The plaintiff, who had been out of town all the day during which the repair activities had taken place, testified that, as he approached the scene of the accident, he was met by a stream of four or five cars followed by a big truck. The cars had their headlights on dim, but the lights of the big truck were "very bright" and therefore blinded him. Tr. 79. The plaintiff's own lights were on dim.
Just as the bright-staring lights of the big truck passed him, the plaintiff for the first time saw the barricade in his path. At the legal speed of 40-45 mph at which he was approaching, the plaintiff was unable to avoid striking the barricade except by cutting quickly to his left, as a result of which his truck overturned and he suffered very severe foot injuries.
In support of its defense that the highway obstruction was adequately signed, the state produced three state employees.
Two of them testified that not only were barricades placed on both sides of the highway excavation with four kerosene flares (two on each side) on the ground in front of each barricade, but that approximately 200 feet on both sides of the excavation a sign "Men Working" with a flare and a flag was additionally placed, and that further yet another sign "Slow Road Repairs" was placed between 800 and 1000 feet from the barricades. (These highway personnel, incidentally, were from an out-of-parish crew, which had worked for just that one day in Evangeline Parish and which had completed its share of the repairs at the site by the end of the day of the accident, before leaving for their own homes in another parish.)
However, the two investigating police officers testified positively that no pre-warning signs at all had been placed at the site, and that the only warning to oncoming traffic of the obstruction in the traffic lane consisted of two barricades placed at either end of the excavation, with one pot-type kerosene flare lit near the highway shoulder in front of the barricade at the side of the excavation from which the plaintiff approached, and with two other such flares (one near the center of the highway and one near the shoulder) on the far side of the other barricade on the opposite side *324 of the excavation from which the plaintiff was approaching. This positive testimony was corroborated by the testimony of four other witnesses, three of whom had traveled on the highway towards Basile in the same direction as the plaintiff but earlier that same evening.
These latter witnesses further positively testified that the barricade was almost undistinguishable, even without the distraction to vision of opposite-bound traffic to oncoming motorists approaching the scene, especially because the lights of the kerosene flares, which rested on the roadway, burned so low that they served as little if any warning to approaching traffic that there was a barricade at the site. In fact, two of the witnesses had remarked to companions at the time, of the extreme hazard to oncoming traffic by lack of warning, and one of them had missed striking the barricade only by a sudden application of brakes.
One of these witnesses testified positively that the saw-horse barricades had no reflectors or reflector-type paint on them; he is corroborated in this by the difficulty observed by other motorists in distinguishing the barricade obstructing the traveled lane of the highway, as well as by the plaintiff's own testimony. Although it is suggested that reflective paint was used on the barricades, actually the Department's only witness as to this stated that he "didn't know", if that were so, although he thought it was. Tr. 172.
We find no error in the trial court's having accepted the strong, detailed, and convincing testimony of the investigating police officers and the other witnesses for the plaintiff to the effect that the warnings to which the highway employees testified, were not in actual fact placed at the scene of this temporary excavation when they left the scene at 4:00 P.M.
It is natural that the highway employees might tend to remember that such was done, in accordance with applicable regulations, especially since they usually did it and also were subject to discharge for failure to provide adequate warnings (Tr. 174). We do not think, however, that the trial court was required to accept the positive testimony of these employees, in the face of the equally positive and most convincing testimony of the witnesses who testified to the contrary for the plaintiff. Further, under the well-settled jurisprudence, the evaluation of the credibility of witnesses is primarily within the province of the trier of fact, not of the appellate tribunal.
We find equally little difficulty in finding, under the circumstances proved, that the Department was negligent in failing to provide adequate safeguards and warnings to oncoming traffic, to warn such traffic of the most dangerous obstruction to traffic created by entirely blocking one of the two lanes of this much-traveled public highway.
No hard and fast rule can be laid down as to the type of warning or barricade that should be erected by the highway authority to warn motorists of a hazard in the highway, but where a barricade or warning is necessary for the protection of motorists it should be of such size or nature as is commensurate with the danger. Reeves v. State, La.App. 2 Cir., 80 So.2d 206 (certiorari granted to consider other issues: see 228 La. 653, 83 So.2d 889 and 232 La. 116, 94 So.2d 1); Rosier v. State, La.App. 2 Cir., 50 So.2d 31.
We think the general rule of law applicable to this case is correctly set out in 40 C.J.S. Highways § 254b, page 293, as follows:
"In general the duty imposed on the highway authorities is to maintain the highways in a condition reasonably safe for travel, having in view the probable traffic and the character of the road and the use reasonably to be anticipated. So, in determining whether a highway is in a reasonable state of *325 repair, its location and character and the extent of travel thereon are to be considered."
Also, in 60 C.J.S. Motor Vehicles § 192, page 530, it is stated:
"While the exercise of reasonable care by highway authorities toward motorists may require a placing of signs warning of dangerous conditions, as where there are obstructions or excavations in the way, or the highway terminates abruptly, or a bridge has been destroyed, warning signs need not be maintained at places which do not present an extraordinary condition or unusual hazard, as, for example, at curves of an ordinary character in the highway. Warnings or notices need not be given where the physical facts give sufficient warning of the danger. Where a barrier gives ample and timely warning of the dangerous condition of the road, there is no duty devolving on those in charge of the highway to post notices of the condition of the road some distance therefrom. In determining what is reasonable warning, the place at which the danger exists, the nature of the road, and the general situation and circumstances surrounding it are to be taken into consideration, as are also the kind of travel and the speed at which vehicles will probably travel on the road. * * *" (Italics ours.)
Aside from the dimness of the flares and the obscurity of the barricade constituting insufficient warning of the obstruction to traffic created by the road excavation, we think that most culpable is the failure under the circumstances to set out pre-warning flares or signals at a reasonable distance in advance of the obstruction, in order to alert oncoming traffic to slow their approach to this hazardous obstruction to passage on this through highway.
As noted in the quotation from Corpus Juris Secundum above, there may be no such duty where a barricade itself with nearby flares does give "ample and timely warning of the dangerous condition of the road." Thus, in Sapir v. Sewerage & Water Bd., La.App. 4 Cir., 127 So.2d 283, a case much relied upon by the appellant, the municipality was not held liable for inadequately signing a mud-pile in a city street, a half-block from a traffic semaphore signal which slowed traffic down, and where there were street-lights within 125 feet and where at the speed of 25 mph applicable the obstruction should clearly have been seen by normal traffic in time to stop.
However, what type of signing is adequate and whether pre-warning and detour signs are required depends on the circumstances of each obstruction site, for "the warnings and means of protection should be of a size and nature commensurate with the danger that lies ahead." Reeves v. State, cited above, at 80 So.2d 211. In the Reeves case, the court noted that not only should a complete barricade have been erected and properly lighted, but also that warning and detour signs should have been set out and maintained. The court specifically commented on the inadequacy under the circumstances of a pre-warning sign "Stop, Slow Ahead" some 1,170 feet in front of the highway hazard, which did not suitably alert motorists to the hazard ahead.
The present situation here, likewise, is very different than the city street site in the Sapir case relied upon by the appellant. We are in the present case concerned with a heavily-traveled through highway, with speed limits of 60 mph for passenger vehicles and of 50 mph for trucks.
In the highway situation present in the instant case, thus, at the place of the accident, it was reasonable to expect that the headlights from the opposing streams of traffic should to some extent interfere with the nighttime powers of observation of the oncoming motorists. It was reasonable to anticipate that alone, pot-flares set on the roadway bed, might not easily be discernible as a warning, when viewed by *326 an approaching motorist in the context of similar-seeming headlights of oncoming traffic, flickering with the movement of the vehicles.
It was likewise to be expected that some of the oncoming traffic (such as the plaintiff) might have their headlights on low beam with a minimum visibility of 150 feet ahead permissible by law, LSA-R.S. 32:321 (2). Further, it was reasonably to be expected that on occasions there would be inability to observe the barricades unless close thereto, through the obscuring of vision ahead by preceding traffic, which might turn off the highway or suddenly pull around the obstruction to reveal it for the first time to a following motorist approaching the scene, as well as by the interference with vision through the headlights of opposite-bound traffic.
Likewise, the greater distances within which it is required to bring to a stop high-speed vehicles, traveling within legal limits and confronted with an emergency not reasonably foreseeable, should be taken into consideration, especially since on a twolane highway such as the present an approaching vehicle often could not swerve around the barricade because of opposing traffic in the other lane.
We realize that standard motor vehicle braking charts are not accurate guides as to the performance of any given vehicle in a specific situation, since stopping distances may vary greatly with individual braking efficiencies, reaction times, and braking surfaces. Baker, Practical use of Speed Charts, 2 Defense Law Journal 156 (1957). See, e. g., Am.Jur.2d Desk Book, Doc. Nos. 174 (p. 454), 175 (455). Nevertheless, these charts indicate that standard stopping distances, including reaction time, of vehicles traveling at 50 mph may vary from 166 to 287 feet, and at 60 mph may vary between 226 and 360 feet; for instance, the minimum legal efficiency of brakes on a pick-up truck, such as the plaintiff was driving, is shown by these charts to have required a standard stopping distance of 287 feet (including 177 feet of braking distance, plus reaction time) at 50 mph, the legal speed limit for it at the site.[1]
*327 The duty of the highway authorities to provide adequate warnings of highway obstructions must also be viewed in the light of the right of motorists to presume and to act under the presumption that the way ahead is reasonably clear for ordinary traffic, so that motorists are not required to be constantly on the lookout for unknown or latent dangers when there is nothing to put them on guard. Snodgrass v. Certanni, 299 La. 915, 87 So.2d 127.
Adequate signing sufficient to protect the traveling public, therefore, should reasonably have taken into consideration such factors, which indicate that adequate pre-warnings to alert oncoming traffic were required under the present circumstances. (As a matter of fact, the highway witnesses who testified that they were supposed to put out these pre-warnings in advance of the hazard-site, do not deny, but instead seem to corroborate this to be a requisite safety precaution under the circumstances.)
We therefore affirm the trial court's ruling that the defendant Department was negligent in having failed to provide adequate warnings of the size and nature commensurate with the hazard and sufficient to warn reasonably prudent motorists of the dangerous obstruction ahead in the complete lane reserved for traffic proceeding in that direction.
Contributory Negligence.
The plaintiff's recovery cannot be denied by reason of contributory negligence, since this issue is not before us.
The defendant's formal answer pleads only that the sole cause of the accident was the plaintiff's negligence in certain specified respects; it does not affirmatively plead contributory negligence, as required by LSA-C.C.P. Art. 1005, nor did the defendant amend its answer so as to plead this defense, LSA-C.C.P. Art. 1154.
The jurisprudence uniformly holds that the defense of contributory negligence is not sufficiently pleaded by allegations merely that the plaintiff's negligence was the sole cause of the accident: Washington Fire & Marine Ins. Co. v. Firemans Fund Insurance Co., La.App. 4 Cir., 130 So.2d 699; Horn v. Lee, La.App. 2 Cir., 68 So.2d 238, certiorari denied; Althans v. Toye Bros. Yellow Cab Co., La.App. Orl., 191 So. 717. See also Landrum v. United States F. & G. Co., La.App. 3 Cir., 151 So.2d 701. Further, since evidence to such effect was already admissible under the pleadings, the pleadings cannot be deemed enlarged to include such plea by reason of LSA-C.C.P. Art. 1154, which pertains to the trial without objection of unpleaded issues. See Meyer v. Rein, La.App. Orl., 18 So.2d 69, certiorari denied.
Quantum.
As a result of the accident, the plaintiff suffered multiple severe fractures and dislocations of the bone in the left foot, as well as a severe crushing injury to the muscles, soft tissue, blood vessels and tendons of this foot. The attending orthopedist characterized the plaintiff's injury as "a very severe foot injury" and estimated that, after treatment, the plaintiff would be left with a permanent 30% functional disability of the ankle and foot, with additional residual factors of pain and swelling persisting indefinitely. The plaintiff is permanently disabled from prolonged weight-bearing. The injuries were extremely painful at the time of and following the accident, and they will result in pain and discomfort indefinitely into the future.
This medical testimony is uncontradicted.
Under these circumstances, the award of $20,000 general damages made by the trial court for the plaintiff's past and future pain and suffering is not manifestly excessive as constituting an abuse of the *328 large discretion of the trier of fact in such matters. See, e. g., Howard v. Early Chevrolet-Poniac-Cadillac, Inc., La.App. 2 Cir., 150 So.2d 309; Broussard v. Savant Lbr. Co., La.App. 3 Cir., 134 So.2d 369; Fullilove v. United States Casualty Company of New York, La.App. 2 Cir., 129 So.2d 816; Hidalgo v. Dupuy, La.App. 1 Cir., 122 So. 2d 639; Girouard v. Houston Fire & Cas. Ins. Co., La.App. 1 Cir., 85 So.2d 664.
We agree with the trial court that a loss of future earnings was insufficiently proved by the plaintiff, although he was disabled by his injuries from securing heavier employment upon the labor market. The plaintiff is a self-employed bulldozer contractor who owns his equipment. Despite the pain and discomfort he suffers thereby, he returned to work operating one of his bulldozers about eight months after the accident.
Aside from well-proven special damages, the trial court further awarded the plaintiff $10,500 for his loss of earnings during the eight-month period he was under his doctor's care and before which he did not return to bulldozer work (according to his own testimony).
The plaintiff was a self-employed bulldozer contractor. He owned two bulldozers, one of which he operated himself in the performance of his contracts. Each of these machines earned $12.50 per hour when working, and the plaintiff estimated that he had average gross earnings of $3,000 less expenses of about half this amount, or an average income of about $1,500 a month.
The plaintiff testified that during the eight months of his disability he had, due to the difficulty in moving, being on crutches part of the time, etc., been unable to contact prospects for jobs; nor, due to his disability, had he been able to perform the heavy work himself. Therefore, he said, his machines had earned only $1,500 during this period.
The trial court based its award for loss of eight months' earnings upon this testimony of the plaintiff alone. The testimony was not corroborated by any written records or any other substantiation of the plaintiff's testimony by any other witness that he had not been able to run his business during the while and had in fact suffered a loss of earning such as he estimated.
While in some instances the trial court's affirmance of a loss of eanrings based on the plaintiff's testimony alone has been sustained where it is justified by the evidence (see White v. Robbins, La.App. 3 Cir., 153 So.2d 165; Stevens v. Dowden, La.App. 3 Cir., 125 So.2d 234), in the present situation the plaintiff's own uncorroborated estimate of his loss of earnings does not, in our opinion, sufficiently prove his loss of earnings in the amount awarded, under the established rule that "`an uncorroborated general estimate by a plaintiff as to his loss of earnings or profits is not sufficient proof of such loss, where corroborative evidence is shown to be available and is not produced'", Jobe v. Credeur, La.App. 3 Cir., 125 So.2d 487. See Stevens v. Dowden, cited above, at 125 So.2d 237, for discussion and citation of other cases in this line of jurisprudence.
The situation before us now is very similar to that in Jobe v. Credeur, cited above. There, we disallowed recovery of special damages of an alleged loss of income by a self-employed drilling contractor, who attempted to prove such loss by his own estimates alone, although we did allow recovery for his disability during that period.
As in the situation in Jobe v. Credeur, we do not doubt that here the loss of services of the owner of a one-man business has economic value and may be compensated in damages, if properly proved. On the other hand, in such an instance, the owner's income may derive from the use of his equipment and from his management activities, many of the latter of which may be performed by telephone or in a car, *329 even though the injured owner himself may not physically be able to perform his heavier dutiesin the present example, for instance, it is not shown why the plaintiff contractor could not have minimized his estimated alleged loss of earnings by hiring another bulldozer operator to perform the physical part of his work, maintaining supervision of his business as a going operation by visiting the job scene in his car, securing other contracts by telephone or car, etc.
We do think, however, that the medical evidence definitely indicates that the plaintiff was totally disabled from performing even this much of work for at least one month following the injury, when he was in severe pain and in his bed, as well as unable substantially to attend to his business for a greater period. When there is a legal right to recover and damages are definitely proven, although the amount is uncertain, the courts have the reasonable discretion to assess same, based on all the facts and circumstances of the case. White v. Robbins and Jobe v. Credeur, cited above. We will therefore reduce to $2,500 the trial court's award for loss of earnings during the plaintiff's eight months of disability to operate his own bulldozer, feeling this amount at least is adequately proven by plaintiff's testimony, accepted by the trial court, and by the surrounding circumstances.
In summary, we disallow $8,000 of the amount awarded by the trial court for loss of earnings (reducing the award for this item to $2,500), and we affirm the trial award of $20,000 for general damages for physical pain and suffering, and of $1,771.51 other special damages.
Decree.
For the foregoing reasons, the award of the trial court is reduced from Thirty-two Thousand Two Hundred Seventy-one and 51/100 ($32,271.51) Dollars to Twenty-four Thousand Two Hundred Seventy-one and 51/100 ($24,271.51) Dollars; as thus amended, the judgment of the trial court is affirmed in all other respects.
Amended and affirmed.
HOOD, Judge (dissenting).
I cannot agree with my conscientious colleagues that the defendant Department of Highways was negligent under the facts which they have found to exist in this case.
The barricades involved here were the usual black and white striped barricades, of the type commonly used by the Highway Department throughout the State to indicate that highway repair work is being done in that location. These barricades had been erected across one lane of this two-lane highway, they extended three or four feet above the surface of the highway, and around them were at least three lighted kerosene, pot-type flares, which flares also were of the type commonly used by the Highway Department to indicate road hazards. The highway where these barricades and flares were located is straight and level, there were no unusual conditions in the highway at that point, and there was nothing to obstruct the view of a motorist as he approached the barricades from either direction. So far as I have been able to determine, if the majority opinion stands this will be the first and only case which holds that a governmental authority charged with the duty of repairing and maintaining roads is guilty of actionable negligence in failing to adequately warn an approaching motorist of a road hazard, where it erects and maintains barricades and flares at the location of the hazard, and when there was nothing to obstruct the motorist's view of either the barricade or the obstruction itself.
I agree that the general rule of law, as quoted from Corpus Juris Secundum in the majority opinion, is the correct law which is applicable here, but I think that law has been applied incorrectly in this case. A part of the quoted law (with emphasis on a *330 different phrase than that emphasized by the majority) reads:
"Where a barrier gives ample and timely warning of the dangerous condition of the road, there is no duty devolving on those in charge of the highway to post notices of the condition of the road some distance therefrom." (60 C.J.S. Motor Vehicles § 192, page 530.)
The law, as I understand it, requires the posting of notices or warnings some distance from the obstruction only in instances where the motorist's view of the hazard is obstructed until it is too late for him to avoid an accident. Advance warning signs located at some distance from the hazard might be required, for instance, in a case where the motorist's view of the dangerous condition is obstructed by a curve in the highway, by a hill, because the hazard does not extend above the surface of the road, or because of some other similar condition or circumstance. In this instance the highway was straight and level, the barricade was above the surface of the highway, and there were no unusual circumstances which could have prevented a motorist who was exercising ordinary care from seeing the barricade in ample time to avoid an accident.
The majority relies on the case of Reeves v. State, La.App. 2 Cir., 80 So.2d 206 (Cert. granted to consider other issues, see 228 La. 653, 83 So.2d 889 and 232 La. 116, 94 So.2d 1). It is true that the State was held liable in that case, but the facts presented there are far different from those existing in the instant suit. In the Reeves case a concrete highway abruptly ended at the Arkansas state line. The Louisiana Department of Highways originally erected a barricade and placed lights at the point where the highway ended, but the barricade had been destroyed and the lights had been discontinued months before the accident occurred. At the time the accident occurred in that case, there were no barricades and no lights of any kind and the hazard consisted of a "jump off" or depression, extending below the surface of the highway, with nothing above the surface which could have been visible to an approaching motorist. In its decision, I think the court clearly implied that if a barricade and lights, similar to those in the instant suit, had been maintained there, then there would have been no liability on the part of the State.
The majority brushes aside the decision in Sapir v. Sewerage & Water Board of City of New Orleans, La.App. 4 Cir., 127 So.2d 283, where the defendant was found to be free from negligence, with the statement that the obstruction there was a half block from a traffic semaphore signal, was within 125 feet of street lights and where the speed limit was 25 miles per hour. I do not think that case can be distinguished from the instant suit because of this minor difference in facts. In the Sapir case plaintiff's automobile ran into a huge mound of mud which had been left on a city street by defendant. A barricade and lights had been placed near the mound by defendant during the afternoon, but after the accident only one of the lights was found to be burning. Plaintiff contended that the other lights had gone out before the accident and that the remaining light did not constitute an adequate warning to motorists. The court noted that "the street itself was in a darkened recess because of the trees," and that the driver of plaintiff's car was traveling within the speed limit. In holding that the barricade and one remaining light constituted adequate warning to motorists, and that the Sewerage & Water Board was not negligent, the court said:
"`We know of no law or jurisprudence that requires the Water Board or the City to do more than properly barricade and light points in the streets where work is being done. There is no evidence here that the barricades or the lights were flimsy and inadequate when installed.
"I am compelled to hold that as the barricades and lights were properly installed, *331 there was no duty on the part of the City or Water Board to maintain an all-night vigil with a special officer or sentinel.'"
In my opinion, the holding in the instant suit is in direct conflict with the holding in the Sapir case.
The majority also points out that the duty of the highway authorities to provide adequate warning of highway obstructions must be viewed in the light of the right of motorists to presume "that the way ahead is reasonably clear for ordinary traffic," citing Snodgrass v. Centanni, 229 La. 915, 87 So. 2d 127, as authority for that statement. If that is true, then it seems to me that the duty of the highway authorities to provide adequate warnings also should be viewed in the light of the well established jurisprudence of this State, as stated by our Supreme Court in Demerest v. Travelers Insurance Company, 234 La. 1048, 102 So. 2d 451, as follows:
"`* * * A motorist has not the right to assume that his course of travel is free of danger or obstruction, in the absence of his ability to see clearly ahead. If he does so assume and continues to travel as though he knew there was perfect clearance ahead, he does so at his own risk and peril.' (Citations omitted).
"`* * * when visibility is materially impaired because of smoke, mist, dust, etc., a motorist should reduce his rate of speed to such extent and keep his car under such control as to reduce to a minimum the possibility of accident from collision; and as an extreme measure of safety, it is his duty, when visibility ahead is not possible or greatly obscured, to stop his car and remain at a standstill until conditions warrant going forward. * * *' (Citations omitted.)"
Our Supreme Court has repeatedly approved the above-quoted statement of the law. See Smith v. Borchers, 243 La. 746, 146 So.2d 793; McCandless v. Southern Bell Telephone & Telegraph Company, 239 La. 983, 120 So.2d 501; Geoghegan v. Greyhound Corporation, 226 La. 405, 76 So.2d 412; Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148; Jackson v. Cook, 189 La. 860, 181 So. 195; and Woodley & Collins v. Schusters' Wholesale Produce Co., 170 La. 527, 128 So. 469.
In this case there has been no showing that the highway repairs were unnecessary, it was the duty of the Highway Department to make them, there was no unnecessary delay in completing the work, and it was necessary that one lane of this highway be barricaded overnight. Since the barricades extended above the surface of the ground and were well lighted by flares, and since the view of plaintiff was not obstructed in any way as he approached the hazard, I feel that the warning was adequate and that the defendant is free from negligence.
The majority also holds that the issue of contributory negligence is not before us. In its answer defendant alleges:
"That plaintiff's alleged injuries, if any, as a result of the accident were due solely to his own negligence, which consisted, but not exclusively, of the following:
"(a) In driving at an excessive rate of speed under the then prevailing conditions;
"(b) In not having his vehicle under proper control;
"(c) In not maintaining a proper lookout;
"(d) In not observing the barricades, flares, signs, and flags erected by the employees of the Department of Highways at the scene of the accident in time to halt his vehicle or in time to negotiate his vehicle around said road repairs safely; and
"(e) In failing to properly apply his brakes in time to avoid the accident."
The majority, on its own initiative, holds that the above-quoted allegations are not *332 sufficient to constitute a plea of "contributory negligence," although no contention or argument to that effect has been made by plaintiff in this case.
It is true that under the jurisprudence as it existed prior to the adoption of the Louisiana Code of Civil Procedure in 1960 the defense of contributory negligence could not be effectively pleaded simply by alleging in the answer that the plaintiff's negligence was the sole cause of the accident. Under the provisions of the new Code of Civil Procedure, however, it seems to me that the above-quoted allegations in defendant's answer are sufficient to constitute a plea of contributory negligence.
Article 1005 of the LSA-Code of Civil Procedure provides that the answer shall set forth affirmatively "contributory negligence," but there is no requirement in the law that it must be pleaded alternatively, or in any specific manner.
In A Short History of Louisiana Civil Procedure, by Henry G. McMahon, appearing on page LXV et seq., of Volume 1, Code of Civil Procedure, it is stated that one of the purposes of the Code is:
"The elimination of many unnecessarily technical rules and results which served more to defeat than to further the ends of justice. A few of these were to be found in the positive law, but many more lurked in the prior decisions of the courts." (LSA-Code of Civil Procedure, Vol. 1, p. LXXIX.)
In the same commentary the author states:
"* * * The new code embodies procedural rules designed to permit the trial of a case to serve as a search for the truth, and to have its decision based on the substantive law applicable, rather than upon technical rules of procedure." (LSA-Code of Civil Procedure, Vol. 1, p. LXXXI.)
As a further indication that the Code of Civil Procedure intended to eliminate the technical rules of procedure heretofore developed by jurisprudence, Article 5051 of the LSA-Code of Civil Procedure provides:
"The articles of this Code are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves."
The editors of the recently published Formulary, which accompanies the Code of Civil Procedure (LSA-C.C.P., Volume 10), have indicated its procedural philosophy in the following statement contained in footnote 10, at page 57 of Volume 10:
Contributory negligence, like all other affirmative defenses, must be pleaded specially in the answer. Art. 1005, LSA-CCP. Further, contributory negligence must be pleaded in the alternative. See Notes of Decisions No. 4 under Article 1005, 3 LSA-CODE OF CIVIL PROCEDURE 314-316, 1960. This rule is a hypertechnical anachronism which the courts should discard, in the interest of justice, at the very first opportunity."
I think these provisions of the Code of Civil Procedure, and the comments contained therein, indicate that the redactors of that Code, and the Legislature, intended to legislatively overrule the heretofore existing jurisprudence which, in effect, required the use of the words "contributory negligence" and "in the alternative" in order to effectively plead contributory negligence. Under the law as it now exists, I believe contributory negligence has been adequately pleaded by defendant in this case.
Even prior to the adoption of the Code of Civil Procedure, however, I think the jurisprudence was established to the effect that where evidence on the question of contributory negligence is admitted without objection during the trial of the case, then the issue of contributory negligence rightly becomes a part of the case, although not specifically pleaded. See Lindsey v. Travelers Indemnity Company, La.App. 2 Cir., 111 So.2d 153 (Cert. denied); Randazzo v. *333 Meraux, La.App. Orl., 27 So.2d 740; Althans v. Toye Bros. Yellow Cab Co., La. App. Orl., 191 So. 717; Baker v. Union Tank Car Company, La.App. 1 Cir., 140 So. 2d 397 (Cert. denied).
In the instant suit evidence was admitted without objection as to the speed at which plaintiff was driving, whether he was blinded by the lights of oncoming vehicles, his familiarity with the highway at that point, whether he had seen barricades of that type before, whether he had observed employees of defendant working on that highway earlier that day, and what actions he took to avoid the accident when he first observed the barricades and flares. The majority holds that this evidence, which was admitted without objection, was not sufficient to enlarge the pleadings and thus could not supply a plea of contributory negligence because "evidence to such effect was already admissible under the pleadings." I cannot agree with that conclusion. Article 1154 of the Code of Civil Procedure provides, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading."
In my opinion, therefore, the issue of contributory negligence is before the court and should have been considered by the majority. The evidence shows clearly, I think, that plaintiff was negligent in the particulars alleged by defendant in its answer, and that his negligence was a proximate and contributing cause of the accident, barring him from recovery.
For these reasons I respectfully dissent.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, Judge, is of the opinion that a rehearing should be granted.
TATE, Judge (concurring).
The dissent to the majority suggests that this court should overrule the prior jurisprudence and should reinterpret the statutory provisions, so as to permit us to consider the affirmative defense of contributory negligencerequired to be specially pleaded by LSA-C.C.P. Art. 1005, as having also been pleaded by the defendant's allegation that the plaintiff's negligence was the sole cause of the accident.
There is much merit in this suggestion. I have always thought that the jurisprudence on the question, which we in the majority followed, was too technical.
On the other hand, the present case was tried, briefed, and decided by the trial court under the conception that contributory negligence was not at issue. It does not seem fair to change on appeal the ground rules under which the case was tried and decided in the lower court, in proper reliance upon the applicable jurisprudence.
Further, the new Code now affords the defendant an opportunity to amend his answer so as to plead an affirmative defense omitted through oversight, see Reporter's Comment (c), under LSA-C.C.P. Article 1154. This provision largely avoids the former rigidity and the unfair consequences of the technical prior jurisprudence, upon which we relied in the majority opinion.
In any case, however, under the present facts, it should be unnecessary to decide the question. The evidence in the present case falls short of proving any contributory negligence by the plaintiff which bars his recovery.
The burden is upon him who relies upon contributory negligence to prove the facts which justify application of this special defense. Deshotels v. Southern Farm Bureau Cas. Ins. Co., 245 La. 23, 156 So.2d 465. This burden was not met by defendant-appellant.
The virtually uncontradicted testimony of the witnesses who observed the scene before or at the time of the accident shows that, due to the obscurity of the barricade and the dimly-burning flares, it was difficult (even without the disturbance to vision created by the lights of oncoming traffic) for a motorist to observe the obstruction across the travelled lane of the highway. In addition, *334 the present plaintiff's vision was distracted and interfered with by the bright lights of oncoming traffic immediately before the accident, and he was not reasonably able to slow down in time or to discern the unexpected obstruction in his path until it was too late to avoid the accident, even though he was approaching at a reasonable speed under the time and circumstances apparent to him. See Suire v. Winters, 233 La. 585, 97 So.2d 404, and cases therein cited.
It is to be remembered that "persons using a public street which is in constant use and when their attention has not been called to any obstructions or perils thereon, have a right to presume and to act on the presumption that the way is reasonably safe for ordinary traffic. They are not called upon to anticipate danger, nor must they be constantly on the lookout for unknown or latent dangers when there is nothing to put them on guard." Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127, 130; Fontenot v. Lafleur, La.App. 3 Cir., 124 So.2d 607, certiorari denied.
I therefore concur in the denial of rehearing.
NOTES
[1] The minimum legal efficiency for brakes of various types of motor vehicles is set forth at LSA-R.S. 32:342, Act 310 of 1962. (Under the prior enactment, a lesser braking efficiency was required, LSA-R.S. 32:284, Act 286 of 1938.)

Thus, for example, passenger vehicles are required by the 1962 enactment to have brakes which at 20 mph will stop them 25 feet from the time brakes are applied, while non-passenger single-unit vehicles of less than 10,000 pounds gross weight are required to have brakes which at 20 mph will stop them 30 feet from the time that the brakes are applied i. e., neither of these minimum stopping distances including reaction time.
The "Uniform Table of Driver Stopping Distances" set forth at Am.Jur.2d Desk Book, Doc. No. 176, p. 456, has stopping distance charts based on brakes having efficiencies of the legal minimum braking distances at 20 mph as set forth in the present Louisiana braking-efficiency regulation, LSA-R.S. 32:342, 1962, referred to above.
This Uniform Table shows that passenger vehicles having such braking efficiency have a standard stopping distance at 50 mph of 258 feet (148 feet braking distance, plus reaction distance); and at 60 mph of 360 feet (228 feet braking distance, plus reaction distance).
Single unit vehicles of less than 10,000 pounds gross weight, such as the present plaintiff's pick-up truck, are shown by the Uniform Table to have a standard stopping distance at 50 mph of 287 feet (177 feet braking distance plus reaction distance). This table further shows that larger vehicles, such as also were subject to a speed limit of 50 mph at the place of the accident, had standard stopping distances of 366 feet and 430 feet.
The table at 9 Blashfield, Automobile Law and Practice, Section 6237, p. 413, is based upon a braking efficiency of a stop in 18 feet at 20 mphi. e., a greater efficiency than is legally required by LSA-R.S. 32:342, 1962. This shows total stopping distances, including reaction time, of 166 feet at 50 mph and of 226 feet at 60 mph.
See also charts set forth at 2 Defense Law Journal 173-178 (1957), 14 Tul.L. Rev. 503 (1940), Lawyer's Motor Vehicle Speed Chart (International Enterprises, 1950), and Driver's Guide of Louisiana Department of Public Safety (1957) at p. 23.