202 So.2d 302 (1967)
The TRAVELERS INSURANCE CO.
v.
Mrs. Voncille W. RAGAN et al.
Voncille W. RAGAN
v.
The CITY OF BAKER et al.
Nos. 7111, 7110.
Court of Appeal of Louisiana, First Circuit.
June 30, 1967.
Rehearing Denied September 27, 1967.
*303 R. Gray Sexton, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for Travelers Ins. Co., plaintiff-appellant.
Daniel R. Atkinson, of George Mathews, Baton Rouge, for Voncille Ragan, defendant-appellee-plaintiff-appellee-appellant.
William C. Bradley, Baker, for City of Baker, defendant-appellant.
R. Gordon Kean, Jr. and Charles E. Pilcher, Baton Rouge, for Parish of East Baton Rouge, appellee.
Before LANDRY, ELLIS and BAILES, JJ.
LANDRY, Judge.
These consolidated actions arise from an automobile accident which occurred within the municipal limits of the City of Baker, East Baton Rouge Parish, Louisiana, at approximately 7:00 P.M., August 20, 1965. Mrs. Voncille W. Ragan, proceeding easterly on Groom Road (a paved two-lane thoroughfare), in a light rain, struck a barricade placed over a hole in the road by a city employee. She lost control of her vehicle which then veered into the opposing lane and therein collided with the westbound automobile of A. B. Hodges, Sr., *304 being driven by Hodges' wife and in which Hodges was riding as a guest passenger.
The accident resulted in a suit by The Travelers Insurance Co. (Travelers), the liability insurer of the Hodges vehicle, against The City of Baker (City), the Parish of East Baton Rouge (Parish) and Mrs. Ragan, seeking recovery under a subrogation agreement pursuant to which certain damages were paid the Hodges. Mrs. Ragan filed an action against the City and Parish to recoup damages to her vehicle.
The trial court held the City alone liable for the accident in negligently barricading the defect in the roadway in that it failed to set out adequate prewarning devices. On this finding, judgment was awarded both plaintiffs against the City and both actions dismissed as to the Parish. Each plaintiff has appealed contending the trial court erred in dismissing his demand against the Parish. The City has also appealed maintaining the trial court erred in finding its employee guilty of negligence and also erred in not finding that Mrs. Ragan alone was negligent in not keeping a proper lookout and traveling at an excessive rate of speed.
Plaintiffs, Mrs. Ragan and Travelers, contend the City was correctly cast under the well established and recognized rule that one who voluntarily assumes a duty of care incumbent upon another must do so with due prudence, citing in support of their argument Indian Towing Company, Inc. v. United States of America, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48. They also argue defendant City is liable under the equally well recognized rule that a municipality is responsible for accidents resulting from the defective condition of its streets where the municipality has either actual or constructive notice of such defects. Finally, they contend the Parish was guilty of actionable negligence in not providing a procedure or method whereby some responsible employee could at all times be contacted and made aware of the need for emergency street repairs in the event of an exigency occurring at night, on a holiday or over a week end as in the case at bar. The latter argument presumes that had some representative of the Parish government been contacted, a proper barricade would have been erected by its employees.
The argument that the City is liable because of its general obligation to maintain City streets is without application in the instant case in view of the stipulation declaring the duty of maintenance rests in the Parish.
We agree that a volunteer or "good Samaritan", who freely undertakes to perform a duty incumbent upon another, must exercise due care and prudence in so doing under the penalty of being held liable for the consequences should he do otherwise. We find, however, that in the case at bar the City, gratuitously performing an obligation resting on the Parish, discharged the burden with the care and prudence demanded. We also find no negligence on the part of the City employees concerned and that the sole proximate cause of the accident was the negligence of Mrs. Ragan.
A better understanding of the issues involved in this lawsuit will be afforded by narration at this point of certain pertinent background information.
Admittedly responsibility for maintenance of Groom Road rests in the Parish. To accommodate the Parish, however, City employees customarily did minor repairs on that portion of the road within the municipal limits. Likewise the City erected barricades to warn and protect the traveling public from rather frequent surface failures which occurred because of an underlying sewer system installed by the City. The defect in question, however, consisted of a major failure in that the hole which suddenly developed at approximately 3:00 P.M. is shown to be approximately three feet in length, one or two feet in width and about two feet in depth. On the day of the accident, City authorities were notified of the defect and at about 6:00 P.M. erected a barricade which consisted of a device described as in the nature of a "sawhorse." *305 It is conclusively shown the sawhorse was on a set of legs in the shape of an "A", the legs being connected by a crossbar approximately eight feet in length. The entire apparatus was from 30 to 34 inches in height and was painted white.
The hole in question occurred in the eastbound lane of Groom Road on a "slant" or "hill', the gradation of which is a matter of vital concern and regarding which the evidence is in hopeless conflict. According to Mrs. Ragan, the defect was on the crest of a "very steep hill" which she encountered shortly after rounding a rather sharp curve. Defendants, however, maintain the so-called "steep hill" is nothing more than a gentle slope and the defect did not occur at the "crest" but at least 40 to 50 feet west of the "crest", and further that the road was straight for at least 350 feet west of the hole. It is conclusively shown that the barricade was placed in the eastbound lane just west of the west edge of the hole. A battery powered amber "flashing light" was affixed thereto at a height of about thirty inches above the roadway facing eastbound drivers. The light alternately flashed off and on to alert eastbound motorists to the danger. In addition, a smudge pot was placed beneath the crossbar of the barricade and ignited. The vicinity of the accident was well lighted with street lights; there being a rather large light on the side of the road just opposite the hole and barricade. The maximum lawful speed was 35 miles per hour.
In substance Mrs. Ragan testified she was proceeding easterly at a speed of about 35 miles per hour. It was misting and she had her windshield wiper in operation. Because it was just about dusk she had turned on her headlights. After rounding a curve just prior to reaching the crest of what she called a steep hill, she first observed the barricade when she was an estimated fifteen feet distant therefrom. She was unable to avoid striking the barricade and running into the hole. One of her tires blew out, she lost control of her vehicle and veered into the westbound lane striking the oncoming Hodges automobile. She was certain she was keeping a proper lookout but that due to the curve, and the location of the barricade at the crest of the hill, the obstruction was not visible until she was virtually upon it. She did not see either the flashing amber light, the burning smudge pot or the painted barricade.
The testimony of Mr. and Mrs. Hodges may be summarized by stating that both deposed there was no steep hill but rather a gradual slope or gentle incline which did not affect visibility of the barricade in the slightest degree. After they turned onto Groom Road from Texas Street about two blocks away, the barricade and lights were visible at least one to one and one-half blocks distant. Although it was misting rain and about dusk, nevertheless visibility was good as Mrs. Hodges was driving with her headlights on. They observed Mrs. Ragan with her headlights on traveling at what they considered an excessive rate of speed and, without swerving or adjusting her speed, crash into the barricade. According to the Hodges, the barricade was not located at the "crest" of the "hill", but approximately halfway the incline leading to the crest, which said incline or slope was of very slight degree.
Officer Larry D. Gibbens, Deputy Sheriff, investigated the accident. His examination revealed the Ragan vehicle was proceeding easterly, the Hodges vehicle was going westerly and that the collision occurred in the westbound lane. He described the hole as being about three feet deep and one or two feet wide with a smaller hole situated six feet east of the larger. He noted a yellow blinking light on the remnants of a wooden barricade, approximately two feet above the larger hole. He observed no other warning device but described the site as being well lighted. He noted a large street light directly above the hole. In the course of his inquiry, he drove to a point about one block west of the scene, retraced the route of Mrs. Ragan's car and found that he was unable to see the barricade until he was approximately 15 feet distant therefrom. He stated the barricade was on the crest of a steep hill and *306 that as he climbed the slope his lights shone into the sky rather than on the roadway thus rendering the barricade unnoticeable to an eastbound driver until it was too late to avoid a collision.
Mr. William G. Popma, Public Works Superintendent, City of Baker, stated he received word about 6:00 P.M. of the occurrence of the cavity. It being Friday, he realized it would be almost impossible to contact Parish employees and, being concerned about leaving such a defect unattended over a week end, decided to install a barricade. He erected and placed the barricade in the manner and position hereinabove indicated. Mr. Popma was at a loss to understand why Mrs. Ragan was not able to see the contraption as she proceeded easterly along Groom Road. Popma also described the roadway as being well lighted and straight and that the so-called "hill" was definitely not a hill but rather a slight gradation. He flatly contradicted the testimony of Officer Gibbens that the slope of the hill blocked an eastbound driver's view of the barricade. Mr. Popma located the hole 40 to 50 feet west of the top of the slight incline. He described the barricade as consisting of two "A" legs connected by a crossbar 8 feet in length, the entire device being painted white. According to Popma, the legs were 30 to 34 inches in height. He set the barricade at about 6:00 P.M. The amber flashing light he affixed to the crossbar and the smudge pot was placed on the roadway on the downgrade side of the hole. After thusly positioning the device, he drove to a canal situated some 300 feet west of the hole at which point he alighted from his vehicle to check the barricade for visibility. He noted the device could be easily seen. It then occurred to him that the barricade might not be visible to the driver of a low "foreign make" car and to check out this theory he crouched on the roadway and noted that even from such a position the barricade was still plainly visible. He also noted the roadway was straight and the street light was burning directly above the hole.
Subsequent to the collision and after the parties and Officer Gibbens had left the scene, Mr. E. B. Prescott, Treasurer of the City, went to the site to replace the barricade. He observed that the former barricade had been completely demolished but some unknown party had placed the remnants thereof and the blinker light in the large hole. He eventually located the smudge pot in the yard of an adjacent residence. Being unable to repair the barricade, he replaced it with another. Prescott described the road as being straight and on a slight incline rather than a hill. He also stated the barricade and hole faced Mrs. Ragan a considerable distance before she reached the top of the rise.
The trial court's award to Mrs. Ragan was based largely on Officer Gibbens' testimony regarding the difficulty in noting the presence of the barricade due to the steep grade of the hill. In so concluding, we believe our brother below accorded undue weight to the witness's testimony for the reasons hereinafter set forth.
While we do not question the veracity of Officer Gibbens' testimony, it appears, however, his testimony was predicated upon conditions which obviously did not exist at the time of the collision. It is clear the impact demolished the original barricade and prior to the officer's arrival, its remnants were placed in the hole together with the amber caution light. The smudge pot had not yet been found when the officer's investigation was conducted. We are also of the opinion both Officer Gibbens and Mrs. Ragan are in error in their respective assessments of the grade of the hill involved.
We believe the evidence preponderates in favor of the conclusion the roadway was straight for a considerable distance preceding the point of the accident and the degree of the hill or rise was slight. It was so testified by Prescott, Popma and Mr. and Mrs. Hodges, all of whom are disinterested witnesses insofar as concerns this litigation.
*307 In finding defendant City negligent, our colleague of the trial court relied heavily upon Christ v. State of Louisiana, Through the Department of Highways, La.App., 161 So.2d 322, a Third Circuit case in which writs were denied by the Supreme Court.
We are in general accord with the views therein pronounced. The court held that under the circumstances pertaining, defendant was negligent in not placing prewarning signs. It was primarily upon this premise that the trial court held defendant City negligent in the case at bar. We note that a rather strong dissent in the Christ case, supra, rested primarily upon Sapir v. Sewerage & Water Board of City of New Orleans, La.App., 127 So.2d 283, wherein it was held the obstruction involved should have been clearly seen by a normally observant motorist in time to stop without the necessity of erecting prewarning signs.
No citation of authority is needed in support of the principle that as regards negligence, each case must be determined in the light of its own particular facts and circumstances. We do not find the Christ case, supra, apposite to the case at hand. It is readily distinguishable from the instant case in that the cited authority involved an accident which occurred after dark on an unlighted, open highway where the lawful speed limit was 60 miles per hour for automobiles and 50 miles per hour for trucks.
The necessity for prewarning devices is dependent upon the circumstances of each case. Christ v. State of Louisiana, Through the Department of Highways, supra, Sapir v. Sewerage & Water Board of City of New Orleans, supra, see also, Reeves v. State, La.App., 80 So.2d 206.
In the case at hand defendant City was not negligent in failing to erect prewarning signs. The accident occurred in a well lighted area of a municipal street where the lawful rate of speed was 35 miles per hour. We find the terrain consisted of a gentle slope or grade insufficient to materially affect visibility. Under such circumstances the barricade as erected and the warning devices posted were adequate and sufficient to alert a normally observant motorist to the danger. We find the sole proximate cause of the accident to be the negligence of Mrs. Ragan in not maintaining a proper lookout. Had she been exercising the degree of care demanded of a prudent driver, there appears no reason why she could not have made an uneventful stop in time to avoid running into the barricade.
The alleged negligence of the Parish in failing to maintain a proper method or system by which its employees could be apprised of emergencies affecting the condition of streets is rendered moot under the circumstances. The sole purpose of establishing a procedure of this nature is to timely apprise the Parish of such circumstances. Upon being so apprised, it would, of course, be the duty of the Parish to take proper precautionary measures to safeguard the traveling public. In the case at bar adequate protective measures were undertaken by a third party. Had the Parish been contacted and informed of the hazard, it could have done no more than did the City, that is, construct an appropriate warning device. Assuming, arguendo, the Parish were negligent in this respect, its negligence did not constitute a proximate cause of the accident.
It was stipulated by all parties that the damages to which Travelers was subrogated aggregates the sum of $892.55. Said plaintiff is entitled to judgment against Mrs. Ragan in that amount.
Accordingly, the judgment of the trial court in favor of plaintiff Travelers against defendant City is annulled, reversed and set aside and plaintiff's demands against the City of Baker dismissed with prejudice.
It is further ordered, adjudged and decreed that the judgment of the trial court rejecting and dismissing Travelers' demands against Mrs. Voncille Ragan be and the same is hereby annulled, reversed and *308 set aside and judgment rendered herein in favor of The Travelers Insurance Company and against Mrs. Voncille Ragan in the full sum of $892.55, together with legal interest thereon at the rate of 5% per annum from date of judicial demand, until paid.
It is further ordered, adjudged and decreed the judgment of the trial court rejecting and dismissing with prejudice Travelers demands against defendant Parish be and the same is hereby affirmed.
It is further ordered, adjudged and decreed that all costs of these proceedings be assessed against defendant herein, Mrs. Voncille W. Ragan.
Reversed and rendered.